In the Matter of the TRUSTS CREATED BY George A. HORMEL and Designated as Trust Nos. 4, 5, and 6, and of the Trusts Created by Jay C. Hormel and Designated as Trust Nos. 101, 102, 103, 201, 202, 203, 301, 302, and 303 as contested, and In the Matter of the Trust Created by Jay C. Hormel Under His Last Will and Testament and In the Matter of the Trust Created by George A. Hormel Under His Last Will and Testament, uncontested.

Nos. CX–93–281, CX–93–426.

Court of Appeals of Minnesota.

Aug. 10, 1993.

Review Denied Oct. 19, 1993.

Peter S. Hendrixson, Carol A. Peterson, William J. Berens, Dorsey & Whitney, Minneapolis, and Gary E. Leonard, Alderson, Ondov, Leonard & Sween, P.A., Austin, for appellant The Hormel Foundation.

Harold D. Field, Jr., Jane F. Godfrey, Leonard, Street and Deinard, P.A., Minneapolis, and Jack Kaufmann, Dewey Ballantine, New York City, for respondents George A. Hormel, II, et al.

Kathleen A. Marron, Robins, Kaplan, Miller & Ciresi, Minneapolis, and Shearman & Sterling, San Francisco, CA, for amici curiae Geo. A. Hormel & Co., d/b/a Hormel Foods Corp. and United Food & Commercial Workers' Union, AFL–CIO Local 9.

Considered and decided by KALITOWSKI, P.J., and CRIPPEN and FLEMING, JJ.

## OPINION

WILLIAM J. FLEMING, Acting Judge.*

Trustee Hormel Foundation appeals a district court order instructing it to partially diversify trust assets despite a finding that the Foundation breached no fiduciary duties and did not abuse its discretion in managing the trust. We affirm the district court's finding of no breach or abuse of discretion but reverse its instruction to diversify trust assets.

## FACTS

The twelve trusts at issue in this litigation were established by George Hormel, the founder of Geo. A. Hormel & Co. (GAH & Co.) based in Austin, and by his son, Jay. Appellant Hormel Foundation (Foundation), a philanthropic organization, serves as trustee. Both the Foundation and the trusts were funded primarily with GAH & Co. stock. The sons of Jay Hormel are the current income beneficiaries of the trusts and are the respondents in this action. Upon termination of the trusts, the entire principal and any undistributed income will be distributed to the Foundation.

While Jay Hormel was alive, more than 50% of GAH & Co.'s outstanding shares were owned by the Foundation and the trusts. When the Foundation became trustee in 1954, the trusts held more than 50% of outstanding stock and continued to do so until 1978. In the early 1960s it controlled over 60% of the stock. The Foundation and the trusts currently hold 41.739% of outstanding shares.

In the late 1970s, the Foundation divested itself of a substantial number of shares to comply with tax law changes. The law required the Foundation to reduce its stock ownership in GAH & Co. from 8% to 2%. In 1975, the Foundation petitioned the district court for approval to sell some of those shares to the trusts. Its petition focused on the trust settlors' intent that the trusts and Foundation maintain a controlling stock interest in GAH & Co. The court approved the divestiture plan, after

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 10.

which the Foundation and trusts held 50.-815% of outstanding shares. The beneficiaries had notice of the petition but did not file an objection to it or appeal the court's order.

In 1980, the Foundation was reorganized as a public foundation, and it was no longer limited to ownership of only 2% of GAH & Co. stock. Of the 41.739% of stock currently controlled by the Foundation, it owns outright 3.27%, it manages 37.52% for the trusts, and it manages 0.95% for another trust not involved in this litigation.

In 1991 and early 1992, the Foundation rejected the income beneficiaries' requests to diversify the trusts' assets. The Foundation petitioned the district court, as it had done every few years in accordance with Minnesota law, for approval of its accounting and retention of the trusts' investments for the accounting periods ending December 31, 1991. The beneficiaries cross-petitioned under Minn.Stat. § 501B.16 (1992) for an order instructing the Foundation to diversify the trusts, alleging that the Foundation had breached its fiduciary duty by failing to diversify. The beneficiaries also asked the court to surcharge the Foundation to compensate them for the breach, and to award them attorney fees and costs to be paid from the trust principal.

The Foundation made a motion for summary judgment, which the district court granted in part and denied in part. The court agreed that the 1975 order conclusively established the settlors' intent that the Foundation and trusts own a controlling stock interest in GAH & Co., so that collateral estoppel barred relitigation of that issue. It rejected the Foundation's argument that the prior orders approving the accounts and retention of trust assets barred the beneficiaries' claims, holding that res judicata did not bar litigation of the diversification issue. The court stated that whether the Foundation has a fiduciary duty to diversify, and whether it breached that duty, depends on what constitutes a controlling stock interest, and that control is a fact issue for the court to determine.

After trial the district court issued an order, and both parties made posttrial motions for amended findings. In an amended order the district court granted the Foundation's petition for approval of its accountings but denied its petition for retention of assets in the twelve trusts. The court found that the Foundation had not breached its fiduciary duty or abused its discretion by holding 41.739% of outstanding stock. The court also found, however, that 30 to 35.7% is sufficient to constitute a controlling stock interest in GAH & Co. and that the Foundation henceforth had a fiduciary duty to diversify assets of the trusts consistent with maintaining that control. The judge ordered the Foundation to reduce the trusts' holdings of GAH & Co. stock to that level and invest the proceeds in a diversified portfolio.

The district court ruled that the beneficiaries were not entitled to a surcharge award against the Foundation. It also ordered that the Foundation's attorney fees, costs, and disbursements be paid from the trusts' income and principal, and gave the beneficiaries a partial award of attorney fees, costs, and disbursements to be paid from the trusts' principal.

A subsequent order made six mostly minor corrections. The Foundation appeals the amended order as corrected, and the income beneficiaries have filed a notice of review.

## ISSUES

I. Did the district court err in concluding that the doctrine of collateral estoppel bars relitigation of the issue of the settlors' intent?

II. Did the district court properly conclude that prior court orders approving the Foundation's accounting and retention of assets for previous accounting periods does not bar the beneficiaries' claims under the doctrine of res judicata?

III. Did the district court err in finding that the Foundation had not breached any fiduciary duties and had not abused its discretion in administering the trusts? If not, did the court err when it nonetheless

ordered the Foundation to partially diversify trust assets?

IV. Did the district court abuse its discretion in awarding the beneficiaries part of their requested attorney fees, to be paid from the trust principal?

## ANALYSIS

### I.

■ Collateral estoppel precludes relitigation of issues that are both identical to those issues already litigated by the parties in a prior action and necessary and essential to the resulting judgment. *Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn.1982). Collateral estoppel is appropriate where:

> (1) the issue [is] identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Victory Highway Village, Inc. v. Weaver*, 480 F.Supp. 71, 74 (D.Minn.1979), *quoted in Ellis*, 319 N.W.2d at 704.

■ Whether collateral estoppel is available is a mixed question of law and fact subject to de novo review. *Regents of the Univ. of Minnesota v. Medical, Inc.*, 382 N.W.2d 201, 207 (Minn.App.1986), *pet. for rev. denied* (Minn. Apr. 18, 1986), *cert. denied*, 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986). Once it is determined that collateral estoppel is available, the decision to apply the doctrine is left to the trial court's discretion. *Id.*

■ We agree with the district court that the elements of collateral estoppel have been satisfied. The identical issue was litigated in both the 1975 action and the 1992 proceeding: whether it was the settlors' intent that the Foundation maintain a controlling stock interest in GAH & Co. When the Foundation was required by tax law changes to reduce its holdings of GAH & Co. stock from 8% to 2%, it sought court permission to sell the stock to some

of the trusts. The Foundation's 1975 petition specifically stated its belief that the sale to the trusts was necessary "in order to fulfill and comply with the directions and intentions of the creators of the trusts involved herein and the trustee further believes that it is for the best interests of the beneficiaries."

The same issue arose in the 1992 action when the Foundation sought court approval of its accounting and retention of assets in the trusts, and the beneficiaries objected. A major disagreement concerned whether the Foundation was justified in not diversifying the trusts' assets because it was required to honor the settlors' intent that the Foundation and trusts together own a controlling interest in GAH & Co. stock.

The same parties were involved in both actions, and the present respondents had a full opportunity to be heard on the issue of the settlors' intent. In 1975 the trustee Foundation petitioned the court, and the sons of Jay Hormel were given notice of the proceedings and a copy of the petition and accompanying exhibits and supporting memorandum. The 15–page memorandum extensively discusses the settlors' intent that the Foundation, in its own right and as trustee, should own a controlling stock interest in GAH & Co. Son James Hormel informally told the Foundation attorney that he objected to the stock purchase but made no formal objection to the court and did not appear at the court hearing. The other sons also did not appear or object.

The court in 1975 reached a final judgment on the merits when it granted the Foundation's petition as trustee to purchase the stock for the trusts. The court based its decision on specific findings that the Foundation's petition "fulfills and complies with the directions and intentions of the creators" of the trusts; granting the petition is in "the best interests of all the beneficiaries"; and "one of the dominant reasons and purposes of the creators" in establishing the trusts and the Foundation "was to place the ownership of controlling stock interest" of GAH & Co. "into said trusts, and The Hormel Foundation, and to provide for the maintenance and continua-

tion of such controlling stock interest in said trusts and The Hormel Foundation."

No appeal was taken from the 1975 order, and the beneficiaries are bound by the court's determination of intent. *See Warner v. Warner (In re Trust of Warner),* 263 Minn. 449, 456, 117 N.W.2d 224, 229 (1962); *see also United States v. Moser,* 266 U.S. 236, 242, 45 S.Ct. 66, 67, 69 L.Ed. 262 (1924) ("[A] *fact* * * * distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law.) *quoted in Warner,* 263 Minn. at 456, 117 N.W.2d at 229.

■ The parties dispute whether the finding of the settlors' intent is a factual finding to which the collateral estoppel doctrine applies or whether the 1975 court made an error of law that this court should correct. We find persuasive the United States Supreme Court's rejection of labels as determinative of whether collateral estoppel applies, stating that the doctrine can apply to preclude relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action. *United States v. Stauffer Chem. Co.,* 464 U.S. 165, 170–71, 104 S.Ct. 575, 578–79, 78 L.Ed.2d 388 (1984).

While *Stauffer Chemical* acknowledges that some cases have "recognize[d] an exception to the applicability of the principles of collateral estoppel for 'unmixed questions of law' arising in 'successive actions involving unrelated subject matter,' the Court casts doubt on the application of that exception." *Id.* at 171–72, 104 S.Ct. at 579 (quoting *Montana v. United States,* 440 U.S. 147, 162, 99 S.Ct. 970, 978, 59 L.Ed.2d 210 (1979)). Furthermore, it cannot be said that this action involves subject matter unrelated to the 1975 action. Nor have the beneficiaries pointed to any special circumstances or change in controlling facts or legal circumstances since 1975 that would merit an exception to otherwise applicable rules of preclusion. *See id.* 464 U.S. at 169, 104 S.Ct. at 578.

■ We disagree with the beneficiaries' assertion that the 1975 court's statement about the settlors' intent is mere surplus or dictum unnecessary to its order because of the court's additional finding that the sale of stock to the trusts was in the beneficiaries' best interests. The intent issue was a central, not a peripheral, matter that was the focus of the Foundation's petition. In contrast, although it was mentioned, there was no extensive discussion about the beneficiaries' best interests. The fact that the court listed two grounds to support its decision does not demonstrate that the issue of the settlors' intent was not necessary to the judgment for collateral estoppel purposes.

The 1975 court expressly stated two grounds to support its decision, and the record indicates that the court specifically determined the issue of the settlors' intent. *Cf. Hauser v. Mealey,* 263 N.W.2d 803, 808–09 (Minn.1978) (where the previous court orders were summary orders unaccompanied by memoranda and the judgment might have been based upon one or more of several grounds but did not expressly rely upon any one of them, none of the possible issues is conclusively established under the doctrine of collateral estoppel); *Roseberg v. Steen,* 363 N.W.2d 102, 106 (Minn.App.1985) (no preclusion of issue where previous court order did not state a conclusion on that issue and it was not known whether the issue was even raised or litigated). We therefore conclude that the requirements of collateral estoppel have been satisfied and the district court correctly held that the income beneficiaries may not relitigate the issue of the settlors' intent.

**II.**

We reject the trustee Foundation's related argument that prior court orders approving its accountings and retention of assets over the years have res judicata effect with regard to any future challenge to its investment strategy of retaining GAH & Co. stock in the trusts. The Minnesota Supreme Court has stated that "[e]ach accounting by a trustee is in actuality a

separate proceeding." *Warner*, 263 Minn. at 455, 117 N.W.2d at 228.

█ It is true that the judgment in a trust accounting proceeding is a final judgment deserving of res judicata effect. *In re Ward*, 360 N.W.2d 650, 653 (Minn.App. 1985), *pet. for rev. denied* (Minn. Mar. 29, 1985). It is not correct to say, however, that an investment strategy once approved in an accounting proceeding is immune from challenge in subsequent accounting periods.

The Foundation urges a contrary conclusion by pointing to the following language in *Ward:*

> [T]he account for the 1978 period was approved by the court. That approval is a final judgment which we are not free to disturb. Only minimal changes have been made in the assets since the 1978 approval. As the court approved the investment philosophy of the trustee in 1978, it was reasonable for the trustee to continue to invest trust assets in the approved manner.

*Id.*

A full reading of that case does not support the Foundation's position. The court in *Ward* held that the 1978 account was res judicata because it was approved by the court with no appeal. *Id.* The court rejected the objections to the 1979, 1980, and 1981 annual accounts because the objectors had failed to prove that the reinvestments subsequent to the 1978 period "were either improvident or the result of a failure to exercise reasonable discretion." *Id.* The court made a separate evaluation of the evidence of alleged post–1978 mismanagement and did not rest its decision on the doctrine of res judicata.

Prior court approval of accounts and retention of investments may reflect on the burden of proof that a challenger in a subsequent accounting period must overcome to show that changed circumstances make that investment strategy no longer prudent. For example, changes in tax laws, accounting standards, or other circumstances may render imprudent certain investment practices that had been deemed prudent during previous years. Absent changed circumstances the prior court approval may signal that future challengers might not prevail, but it does not bar their challenge on res judicata grounds.

### III.

The district court found that the Foundation did not breach any fiduciary duty or abuse its discretion as trustee in managing the trusts. The court also stated, however, that the Foundation had a prospective duty to partially diversify the trusts consistent with upholding the settlors' intent that the Foundation and trusts maintain a controlling stock interest in GAH & Co.

█ A trustee has a duty to manage the trust prudently. Minn.Stat. § 501B.10, subd. 1 (1992); *State Bank & Trust Co. of New Ulm v. Melzark (In re Trust of Kemske)*, 305 N.W.2d 755, 761 (Minn.1981). It is within the trustee's sound discretion to decide whether to dispose of trust property or any kind of investment, unless the trust instrument or a court order specifically directs otherwise. Minn.Stat. § 501B.10, subd. 2 (1992).

█ The beneficiaries point to language in Minn.Stat. § 501B.10, subd. 1(a) and (b)(2) to support their argument that there is a duty to diversify trust assets. Those provisions state that in considering an investment, a trustee "shall consider the role that the investment plays within the trust's overall portfolio of assets" and that one of the factors to consider in determining the prudence of a particular investment is "the composition of the portfolio of the trust with regard to diversification."[1] Minn. Stat. § 501B.10, subd. 1(a), (b)(2).

---

1. The Minnesota Trustees' Powers Act enacted in 1989 expressly addresses a trustee's duty to diversify. The Act permits a grantor to expressly incorporate by reference in a written instrument any of the powers enumerated therein, including the power of the trustee to retain assets "without regard to any effect retention may have on the diversification of the assets of the trust," and to make investments "without regard to diversification." Minn.Stat. §§ 501B.80, 501B.81, subds. 1, 5 (1992).

The quoted language refers to the initial making of an investment, whereas in this case the settlors themselves funded the trusts with GAH & Co. stock. The disposal of trust property and investments is left to the trustee's discretion under Minn.Stat. § 501B.10, subd. 2. When a matter is entrusted to the trustee's discretion, a court generally should not intervene unless that discretion has been abused.

The record supports the district court's finding that the Foundation committed no breach of fiduciary duty or abuse of discretion. The district court's finding will not be set aside unless clearly erroneous. *See* Minn.R.Civ.P. 52.01. On the issue of a controlling stock interest, the court found that the Foundation's current ownership of 41.739% of GAH & Co. stock was "within a 'range' of reasonable choices by the Foundation as to what would constitute control." On the issue of trust performance, the beneficiaries themselves apparently do not contest the Foundation's statements or the district court's findings about the healthy performance of the trusts.

The beneficiaries' income from the trusts has increased over the last dozen years and has doubled during the accounting period at issue here. GAH & Co. stock has appreciated in value and compares favorably with standard indices. The one point of contention regarding performance is the stock's current yield, which the beneficiaries and the district court found to be too low. The Foundation explains that this is due to the stock's appreciation. We see no reason to consider the current yield apart from other performance factors and find that it does not provide a basis for ordering diversification in light of the overall performance picture and the district court's finding that the Foundation acted within its discretion as trustee.

The record also supports the district court's refusal to order the Foundation as trustee to prevail upon the GAH &

Co. board to undertake the recapitalization plan proposed by the beneficiaries. It is within the trustee's discretion to decide whether the proposal is prudent and desirable, bearing in mind all its obligations as trustee.

We find no support, however, for the conclusion that the Foundation has a prospective duty to partially diversify the trusts. A district court has jurisdiction under Minn.Stat. § 501B.16 to issue an order that it "considers appropriate." *See* Minn.Stat. §§ 501B.21, 501B.24 (1992). In defining "appropriate" the court must have legal justification for any order it makes.

The district court made a determination, supported by the record, that the Foundation's holdings of GAH & Co. stock were within a permissible range to maintain control. We see no basis for an additional instruction to partially diversify the trusts under the circumstances presented here.

We do not say that a district court must in all situations refrain from instructing a trustee unless it finds a breach of fiduciary duty or abuse of discretion. Trust cases often present unique facts and circumstances that are difficult to analogize to other seemingly similar cases. The standard for evaluating a trustee's actions remains whether the trustee prudently managed trust assets in light of the settlor's intent and the beneficiary's interests. The record here supports the district court's determination that the Foundation prudently managed the trust. The facts and circumstances do not support the additional instruction to partially diversify trusts' assets.

## IV.

The district court awarded the Foundation attorney fees and costs to date of $669,160.83. It specified that $6,912.24 was to be paid from trust income and the balance from the principal. The court also

---

The existence of the legislation indicates that the state is not hostile, as a matter of public policy, to the concept of undiversified trusts, but it does not answer the question of whether, in the absence of express language, there is a separate duty to diversify apart from the general duty of prudent management.

gave the trust beneficiaries a partial award of attorney fees and costs. Of the requested $1,581,703.75, the court awarded $527,234.56 to be paid from trust principal.

 It is within the " 'sound and cautiously exercised discretion' " of the district court whether to award attorney fees and costs from a trust. *In re Great Northern Iron Ore Properties*, 311 N.W.2d 488, 492 (Minn.1981) (quoting *Atwood v. Holmes (In re Trust of Atwood)*, 227 Minn. 495, 501, 35 N.W.2d 736, 740 (1949)). Under the applicable statute, the charge must be made against trust *income* if the matter "primarily concerns the income interest, unless the court directs otherwise." Minn.Stat. § 501B.71, subd. 1(4) (1992). The charge must be made against the *principal* if the costs "primarily concern[ ] matters of principal" or, "unless the court directs otherwise, [the] expenses [are] incurred in maintaining or defending any action to construe the trust or protect it." *Id.*, subd. 3(1), (2).

 The statute gives the court discretion to determine whether certain fees, if awarded, should be paid from trust income or principal. Although the statute says that certain costs "must" be paid from a particular source, some provisions, including the relevant ones quoted above, include the qualifier "unless the court directs otherwise."

 In cross-petitioning for diversification of the trusts, the income beneficiaries sought clarification of the settlors' intent in creating the trusts. They also clearly had an honest difference of opinion about whether the Foundation had a specific duty to diversify the trusts' assets. *See In re Great Iron Ore Properties*, 311 N.W.2d at 492–93. The statute does not require that a party "prevail" in order to receive attorney fees. In light of the considerable discretion afforded the district court in this area, the court did not abuse its discretion in awarding part of the attorney fees requested by the beneficiaries.

## DECISION

The trustee did not abuse its discretion by holding 41.739% of company stock in light of the settlors' intent that the trustee, in its own right and through the trusts, maintain a controlling stock interest in the company. We affirm the district court's determination that the trustee prudently managed the trusts but reverse the additional instruction to partially diversify the trusts. We also affirm the district court's partial award of attorney fees to the income beneficiaries.

**Affirmed in part and reversed in part.**