*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1182**

In the Matter of the Welfare of the Child(ren) of: Z. C. W., Parent.

**Filed January 20, 2026**
**Affirmed**
**Schmidt, Judge**

Scott County District Court
File No. 70-JV-25-846

Daniel B. McGuire, McGuire Law Offices PLLC, Roseville, Minnesota (for appellant Z.C.W.)

John M. Jerabek, Anna Street, Tuft, Lach, Jerabek & O'Connell, PLLC, Maplewood, Minnesota (for respondents K.M.H. and L.D.H.)

Ronald Hocevar, Scott County Attorney, Elisabeth M. Johnson, Assistant County Attorney, Shakopee, Minnesota (for respondent Scott County Human Services)

Madeline Erickson, Chaska, Minnesota (guardian ad litem)

        Considered and decided by Bentley, Presiding Judge; Bratvold, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

        Appellant Z.C.W. (father) challenges the district court's order granting respondent Scott County Health and Human Service's (the county) petition to terminate his parental rights to child. We affirm.

## FACTS

Child was born in November 2022. A month later, child was brought to the emergency room "due to bruises on . . . child's left cheek." Mother told the doctors that the injury resulted from an accident, and the hospital did not report the visit to child protective services (CPS) because mother's "explanation was consistent with the injury."

Two weeks later, mother and father brought child to a different hospital because she "was not moving her right arm." The doctor discovered that child had a broken arm and bruising that was "indicative of abuse." The doctor also expressed concern about child's visit to the other hospital because the bruise on her cheek was consistent with abuse. The hospital completed a physical-abuse evaluation.

The next day, the county put child on a 72-hour health-and-safety hold and placed her in the care of her grandmother. During the 72-hour hold, mother and father retrieved child and fled the state. After a five-hour standoff and negotiation with law enforcement in Kentucky, mother and father were arrested and charged with felony kidnapping.

After returning child to Minnesota, child was placed with non-relative foster parents. The county then filed a child in need of protection or services (CHIPS) petition on behalf of child and termination of parental rights (TPR) petitions against both parents.

An eight-day trial was held on the CHIPS and TPR petitions (the first trial). In May 2024, child was adjudicated CHIPS, and mother's parental rights were terminated. Father's parental rights were not terminated.

While awaiting his criminal trial for his kidnapping charges, father was given a case plan to assist in reunifying with child. The case plan required father to, among other things,

2

(1) complete a parenting assessment, follow the recommendations, and discuss with the county a plan for demonstrating compliance; (2) demonstrate an understanding of child and her needs; (3) demonstrate an understanding of child's trauma history and how to make her environment safe; (4) demonstrate a safe, trusting, and healthy attachment to child; (5) demonstrate an ability to keep child safe from mother; and (6) develop a plan and demonstrate how father will parent child independently.

From May 2024 to January 2025, a caseworker submitted periodic reports documenting father's lack of progress. The case worker tried to meet with father to work on the case plan, but father often had conflicts and could not meet. Father completed a parenting assessment and a psychological evaluation but failed to comply with the recommendations from the assessment and evaluation.

During parenting time with father, observers noted that child exhibited significant gastrointestinal distress and trauma symptoms, including pulling her own hair out in chunks around father. Observers also noted that interactions with father triggered distress in child, that "child [was] not attached to . . . father in a healthy manner," and that father was not "responding appropriately" to child's cues or able to "sooth . . . child when she was distressed." The county provided a series of recommendations, but father "failed to follow critical elements of the recommendations." Father sought out a parenting program, but "was unable to use the resource to advance his parenting skills."

After their criminal jury trials, mother and father were both found guilty of felony kidnapping. Father is in prison with an anticipated release in June 2026.

In January 2025, the county filed a second petition to terminate father's parental rights. Child's foster parents moved to intervene as a party. The district court granted their motion over father's objection. In the second TPR trial, the district court heard testimony from 12 witnesses and received 58 exhibits.

The district court received evidence from father's case worker. The case worker noted that father participated in supervised visitation twice per week but never progressed past this level of supervision. The case worker noted that father needed prompting to address child's basic needs, like when to change her diaper or feed her, father did not recognize child's distress cues, and father was not able to address child's discomfort.

The district court also received evidence that since the termination of mother's parental rights, father failed to demonstrate an ability to keep child safe from mother. The district court received testimony from the first TPR trial in which father stated that he "ha[d] no concerns about [m]other" and that he thinks that mother is a great parent despite the evidence that mother had physically abused child. The county recommended that father "follow[] up with his mental health needs and work[] with CPS to establish a safety plan" but that father could not successfully establish a safety plan because of his "ongoing refusal to acknowledge" that mother abused child. The county submitted evidence that father has shown he cannot, or will not, keep child safe from mother, who abused child.

After the trial, the district court issued an order terminating father's parental rights. Father appeals.

**DECISION**

A district court may involuntarily terminate parental rights when "(1) at least one statutory ground for termination is supported by clear and convincing evidence, (2) the county made reasonable efforts to reunite the family, and (3) termination is in the child's best interests." *In re Welfare of Child of J.H.*, 968 N.W.2d 593, 600 (Minn. App. 2021), *rev. denied* (Minn. Dec. 6, 2021). The county bears the burden of proving grounds for termination by clear and convincing evidence. *See In re Welfare of Child of H.G.D.*, 962 N.W.2d 861, 869-70 (Minn. 2021).

We review a district court's findings of fact for clear error. *In re Welfare of Children of J.R.B.*, 805 N.W.2d 895, 901 (Minn. App. 2011), *rev. denied* (Minn. Jan. 6, 2012). When considering challenges to factual findings, appellate courts must view the evidence in the light most favorable to the district court's findings and cannot make findings of fact, "reweigh the evidence," or "reconcile conflicting evidence." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221-22 (Minn. 2021) (quotation omitted). When the record supports the factual findings, "it is immaterial that the record might also provide a reasonable basis for inferences and findings to the contrary." *Id.* at 223 (quotation omitted).

On appeal, father challenges the district court's determinations that (1) five statutory bases exist for terminating his parental rights; (2) termination was in child's best interests; and (3) the county made reasonable efforts to reunite father and child. Father also argues that (4) the district court violated his due-process rights; and (5) he received ineffective assistance of counsel. We address each argument in turn.

5

**I.** **The district court did not abuse its discretion in determining that statutory grounds for termination of father's parental rights exist.**

Father challenges the district court's determination that five statutory bases exist to terminate his parental rights. We review a court's determination that a statutory basis for termination exists for an abuse of discretion. *J.R.B.*, 805 N.W.2d at 901. "[A] district court abuses its discretion if it acts against logic and the facts on record, or if it enters fact[ual] findings that are unsupported by the record, or if it misapplies the law." *In re Adoption of T.A.M.*, 791 N.W.2d 573, 578 (Minn. App. 2010) (quotation and citations omitted).

The district court determined that the following statutory bases existed to terminate father's parental rights: (1) father failed to comply with the duties imposed by the parent/child relationship; (2) father is palpably unfit to be a party to the parent/child relationship; (3) reasonable efforts have failed to correct conditions leading to child's out-of-home placement; (4) child is neglected and in foster care; and (5) father has been convicted of an offense that requires registration as a predatory offender. *See* Minn. Stat. § 260C.301, subd. 1(b)(2)-(4), (7)-(8) (2024). Father argues that no statutory basis for termination exists, but only challenges four of the district court's five statutory bases. We may affirm if at least one statutory basis for termination exists and termination is in the child's best interests. *J.R.B.*, 805 N.W.2d at 906. Since we affirm based upon two statutory bases, we need not address the other three bases that the district court determined exist.

6

**A. The district court did not abuse its discretion in determining that father has a conviction that requires him to register as a predatory offender.**

A statutory basis to terminate parental rights exists if the parent has been convicted of certain crimes, including an offense that requires registration as a predatory offender under section 243.166, subdivision 1b, paragraph (a) or (b). Minn. Stat. § 260C.301, subd. 1(b)(8); Minn. Stat. § 260.012(g)(5) (2024). Kidnapping—in violation of section 609.25 (2024)—requires registration as a predatory offender under section 243.166, subdivision 1b(a) (2024). Minn. Stat. § 243.166, subd. 1b(a)(1)(ii) (2024).

Father was convicted of kidnapping in violation of section 609.25 and is required to register as a predatory offender under section 243.166, subdivision 1b(a). Father raises no challenges against this statutory basis for the termination of his parental rights. Our independent review of the record did not identify any abuse of discretion by the district court in determining that this basis was met.

**B. The district court did not abuse its discretion in determining that child is neglected and in foster care.[1]**

The district court determined that the county proved the statutory basis that child is "neglected and in foster care." Minn. Stat. § 260C.301, subd. 1(b)(7). A child who is neglected and in foster care is one:

> (1) who has been placed in foster care by court order; and
>
> (2) whose parents' circumstances, condition, or conduct are such that the child cannot be returned to them; and

---

[1] Though we need not address any additional statutory bases after affirming the district court's determination that father was convicted of an offense that requires predatory-offender registration, we choose to do so because we agree that multiple statutory bases exist to terminate father's parental rights. *J.R.B.*, 805 N.W.2d at 906.

(3) whose parents, despite the availability of needed rehabilitative services, have failed to make reasonable efforts to adjust their circumstances, condition or conduct, or have willfully failed to meet reasonable expectations with regard to visiting the child or providing financial support for the child.

Minn. Stat. § 260C.007, subd. 24 (2024).

Father asserts that the record does not support the district court's determination that the child is neglected and in foster care because he "made many efforts to adjust his circumstances, conduct, or conditions to allow . . . child to return home," and he complied with his case plan in multiple ways. But father's assertions do not show that the district court made a clearly erroneous factual finding or otherwise abused its discretion in determining that this statutory basis is met. *See J.R.B.*, 805 N.W.2d at 901. Instead, father asks us to reweigh the evidence that was presented to the district court and come to the opposite conclusion, which we cannot do. *Kenney*, 963 N.W.2d at 221-22. Because father has not demonstrated that the district court committed clear error in its findings, we conclude that the district court did not abuse its discretion when it determined that this statutory basis for the termination of father's parental rights exists.

## II. The district court did not abuse its discretion in determining that the termination of father's parental rights is in child's best interests.

Father argues the district court abused its discretion when it determined that termination of his parental rights was in child's best interests. We review a determination that termination of parental rights is in a child's best interests for an abuse of discretion. *In re Welfare of Child of J.R.R.*, 943 N.W.2d 661, 669 (Minn. App. 2020).

8

To determine whether termination of parental rights is in the best interests of a child, a district court must analyze: "the child's interest[s] in preserving the parent-child relationship; the parent's interest[s] in preserving the parent-child relationship; and any competing interest of the child." *In re Welfare of R.T.B.*, 492 N.W.2d 1, 4 (Minn. App. 1992); *see also* Minn. R. Juv. Prot. P. 58.04(c)(2)(ii) (requiring the district court to consider these factors when addressing whether a termination of parental rights is in a child's best interests). "Competing interests include such things as a stable environment, health considerations and the child's preferences." *Id.*

Father argues that the termination of his parental rights is not in child's best interests because child "was observed being comfortable around [father] during [supervised-parenting-time] visits." Father also argues that he "engaged in many services" and that "all children need permanency, which does not necessarily mean that the child be placed outside of parental care."

Father's argument does not show that the district court abused its discretion. Like father's other arguments throughout his brief, he seeks to overturn the district court's order by counterbalancing the district court's findings rather than identifying clear errors or improper legal conclusions. Father asks us to reweigh the evidence, which we will not do. *See Kenney*, 963 N.W.2d at 221-22 (stating that appellate courts do not reweigh the evidence). Because father has not shown that the district court committed clear error in its findings as to any of the best interests factors or made any improper legal conclusions, we determine that the district court did not abuse its discretion when it determined that the termination of father's parental rights is in child's best interests.

9

**III.    The district court did not abuse its discretion in determining that the county made reasonable efforts towards reunification.**

Father argues that the district court abused its discretion by determining that the county made reasonable efforts to rehabilitate him and reunite him with child. We review a district court's findings identifying county efforts to reunify a family for clear error. *In re Welfare of Children of J.C.L.*, 958 N.W.2d 653, 658 (Minn. App. 2021), *rev. denied* (Minn. May 18, 2021). We review a district court's determination of whether those efforts were reasonable for an abuse of discretion. *In re Welfare of Child of D.L.D.*, 865 N.W.2d 315, 323 (Minn. App. 2015), *rev. denied* (Minn. July 20, 2015).

A court must make "specific findings" in every termination proceeding that either

> reasonable efforts to finalize the permanency plan to reunify the child and the parent were made including individualized and explicit findings regarding the nature and extent of efforts made by the social services agency to rehabilitate the parent and reunite the family; or . . . that reasonable efforts for reunification [were] not required.

Minn. Stat. § 260C.301, subd. 8 (2024). When reasonable efforts are required, the district court must consider whether the services provided to the parent and child were:

> (1)    selected in collaboration with the child's family and, if appropriate, the child;
>
> (2)    tailored to the individualized needs of the child and child's family;
>
> (3)    relevant to the safety, protection, and well-being of the child;
>
> (4)    adequate to meet the individualized needs of the child and family;
>
> (5)    culturally appropriate;

10

(6)    available and accessible;

(7)    consistent and timely; and

(8)    realistic under the circumstances.

Minn. Stat. § 260.012(h) (2024).  "Reasonable efforts encompass more than just a case plan." *In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 88 (Minn. App. 2012).

First, we reject father's reasonable-efforts argument because reunification efforts were not required since father was convicted of an offense—kidnapping—that requires registration as a predatory offender under section 243.166, subdivision 1b(a).  *See* Minn. Stat. § 260.012(g)(5) ("Reunification of a child with a parent is not required if the parent has been convicted of: . . . an offense that requires registration as a predatory offender under section 243.166, subdivision 1b, paragraph (a) or (b).").  Since we affirm the district court's ruling on the statutory basis of his predatory-registration requirement, the county did not need to prove reasonable efforts towards reunification.

Nonetheless, we agree with the district court's determination that the county made reasonable efforts to reunite father and child.  On appeal, father's reasonable-efforts argument centers on his assertion that various parts of the attempted reunification process did not go as well as they could have.  Father's argument amounts to disagreement with the district court's findings, which does not establish clear error.  *See J.R.B.*, 805 N.W.2d at 901.  Father essentially asks us to reweigh portions of the evidence and to reconcile conflicting evidence, which we cannot do.  *See Kenney*, 963 N.W.2d at 221-22.  Our careful review of the record establishes that the district court acted within its discretion in determining that the county's efforts towards reunification were reasonable.

11

**IV.    The district court did not violate father's due process rights.**

Father argues that the district court violated his due process rights by (1) precluding him from relitigating issues that were raised during the first trial; and (2) declining to recuse from father's case. We address each argument in turn.

**A.    The district court did not violate father's due process rights by precluding father from relitigating issues presented during the first trial.**

The doctrine of "[c]ollateral estoppel bars the relitigation of issues which are both identical to those issues already litigated by the parties in a prior action and necessary and essential to the resulting judgment." *Pope County Bd. of Comm'rs v. Pryzmus*, 682 N.W.2d 666, 669 (Minn. App. 2004) (quotation omitted), *rev. denied* (Minn. Sept. 29, 2004). Collateral estoppel applies when (1) the issue raised "was identical to one in a prior adjudication"; (2) the prior case resulted in "a final judgment on the merits"; (3) "the estopped party was a party . . . to the prior adjudication"; and (4) the estopped party had "a full and fair opportunity to be heard on the adjudicated issue." *Id.* "Whether collateral estoppel is available is a mixed question of law and fact" that we review de novo. *In re Trusts Created by Hormel*, 504 N.W.2d 505, 509 (Minn. App. 1993), *rev. denied* (Minn. Oct. 19, 1993). But "[o]nce it is determined that collateral estoppel is available, the decision to apply the doctrine is left to the [district] court's discretion." *Id.*

Before trial, the district court granted the county's motion to preclude relitigation of issues presented during the first trial. Father argues that this ruling prevented him from exploring "alternative theories as to how . . . child was injured in the first instance[.]" Father also wanted to present evidence that the child's psychological issues and trauma

were the result of the "child being removed from her parents' care by the government and not caused by the parents themselves." Father contends that "the outcome of the [second trial] might have been different" had he been permitted to present evidence on these issues.

We agree with the district court that the doctrine of collateral estoppel barred father's attempt to relitigate these issues. The issues are identical to those raised in a prior adjudication (the first trial), there was a final judgment on the merits (the order terminated mother's parental rights but not father's parental rights), father was a party to the proceedings, and father had a "full and fair opportunity to be heard" at the first trial. *Pryzmus*, 682 N.W.2d at 669. The district court neither erred in determining that collateral estoppel was available, nor abused its discretion in applying the doctrine to the issues previously litigated in the first trial by granting the county's motion.

**B.     The district court did not err by declining to recuse from father's case.**

Father argues the judge in his second trial should have recused themself. "Whether a judge has violated the Code of Judicial Conduct is a question of law, which we review de novo." *State v. Dorsey*, 701 N.W.2d 238, 246 (Minn. 2005). "In determining whether a judge should be disqualified . . . the question is whether an objective examination of the facts and circumstances would cause a reasonable examiner to question the judge's impartiality." *State v. Burrell*, 743 N.W.2d 596, 601 (Minn. 2008). But a party declaring a judge to be "partial" does not "in itself generate a reasonable question as to the judge's impartiality." *Id.* at 601-02. Adverse rulings also do not, by themselves, constitute bias. *State v. Sailee*, 792 N.W.2d 90, 96 (Minn. App. 2010), *rev. denied* (Minn. Mar. 15, 2011).

13

Father argues that "his case was not being fairly judged" because the district court held him to a "different standard than the other parties." Father's argument focuses on the court precluding the relitigation of issues determined at the first trial.

As articulated above, the district court properly determined that collateral estoppel was available and within its discretion, and it applied the doctrine to preclude relitigating issues raised at the first trial. Additionally, the record reflects that the district court did not always rule in favor of the other parties. The district court sustained many of father's objections, overruled objections by the county, and excluded one of the county's proposed exhibits. Father fails to raise any reasonable question about the judge's impartiality.

## V. Father received effective assistance of counsel.

Father argues that we should reverse the district court's order terminating his parental rights because he received ineffective assistance of counsel. We disagree.

A parent has a "right to effective assistance of counsel in connection with a proceeding in juvenile court." Minn. Stat. § 260C.163, subd. 3(a) (2024). To prevail on an ineffective-assistance-of-counsel claim, father must show that (1) his counsel's performance fell below an objective standard of reasonableness, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *In re Welfare of L.B.*, 404 N.W.2d 341, 345 (Minn. App. 1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "[R]easonable probability" means "a probability sufficient to undermine confidence in the outcome" of the case. *Strickland*, 466 U.S. at 694. We review ineffective-assistance-of-counsel claims de novo. *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003).

14

Father argues that he received ineffective assistance of counsel for two reasons. First, father argues that his attorney improperly advised him that he could not appeal the first order that terminated mother's parental rights. Second, father argues that his attorney improperly delayed sending the psychological examination results to the social worker.

As to the argument about appealing the district court's first order, father simply states that had his attorney properly advised him that he could appeal the first order, "he reasonably may have appealed it, and the ultimate findings made [in the first TPR order]— findings that the district court took judicial notice of and relied heavily on in issuing its [second TPR] order—reasonably may have been different." Father's argument fails the second prong of the *Strickland* test because father fails to articulate the grounds under which he might have appealed the first order. *Id.* ("We need not address both the performance and prejudice prongs if one is determinative."). Thus, father has not demonstrated how any such appeal would have altered the outcome of the second trial. *Id.*

As to father's second ineffective-assistance contention, father cites no authority supporting his assertion that his attorney had to send the results of his psychological examination to the county social worker within a certain timeline. Father's argument merely states that his attorney's actions "directly impacted [his] progress on the case." But that contention does not establish that his attorney's actions fell below an objective standard of reasonableness. Father's argument fails the first prong of the *Strickland* test.

**Affirmed.**