In re Matter of the TRUSTEESHIP OF the TRUST Created Under the Last Will and Testament and Codicil thereto OF James T. WILLIAMS, Deceased.

No. C4–00–2239.

Court of Appeals of Minnesota.

July 9, 2001.

Review Denied Sept. 25, 2001.

Thomas L. Kimer, John F. Beukema, Bonnie M. Fleming, Faegre & Benson LLP, Minneapolis, MN, (for appellant Wells Fargo Bank Minnesota, N.A., f/k/a Norwest Bank Minnesota, N.A.).

Alan I. Silver, Charles E. Lundberg, Bassford, Lockhart, Truesdell & Briggs, P.A., and Norman M. Abramson, Patterson, Thuente, Skaar & Christensen, P.A., Minneapolis, MN, (for respondent Robert K. Williams).

Considered and decided by WILLIS, Presiding Judge, HALBROOKS and HANSON, Judges.

## OPINION

WILLIS, Judge

In this surcharge action, appellant professional trustee challenges the district court's conclusion that, during the 1990–94 accounting period, trustees had a duty under Minn.Stat. § 501B.10 (1994) to diversify the assets of a trust. Appellant also contends that the district court abused its discretion by (1) calculating the surcharge from the beginning of the accounting period, (2) requiring appellant to reimburse to the trust all of its trustee fees for the accounting period, and (3) granting an award of attorney fees against appellant. Because the district court did not abuse its discretion in calculating the surcharge from the beginning of the accounting period, we affirm in part. But because the district court erred in (1) determining that Minn.Stat. § 501B.10 imposed a duty to diversify apart from the duty of prudent management imposed by that provision, (2) denying appellant all trustee fees for the accounting period without finding that those fees related to any improper actions

by the trustee, and (3) granting attorney fees against appellant under an exception to the "American rule" that has not been recognized in Minnesota, we reverse in part and remand.

## FACTS

In his 1949 last will and testament and a 1950 codicil thereto, James T. Williams, the founder of the Creamette Company, created a trust. At all relevant times, the professional trustee was, Northwestern National Bank of Minneapolis and its successors (Norwest).[1] From 1979 until 1997, the trustees were Robert H. Williams, son of James T. Williams and father of respondent Robert K. Williams; Margaret W. Linstroth, daughter of James T. Williams; and appellant Norwest. Article VII, section 13, of the trust instrument provides that

> a majority of the Trustees shall have the right to decide upon the course to pursue in any given situation, and such decisions shall be binding upon all the Trustees.

Article IX of the trust instrument confers specific powers on the trustees, including the authority:

> To retain as a part of my estate or of the trust estate any or all of the properties or securities transferred to or acquired by them hereunder, so long as they may deem it advisable, or expedient so to do.

> To invest and reinvest any and all funds which may become available for investment in, or exchange trust assets for, any securities or properties as would be purchased by diligent and prudent individuals of discretion and intelligence in the management of their own affairs.

---

1. Northwestern changed its name, first to Norwest Bank Minneapolis, National Association; then to Norwest Bank Minnesota, National Association; and then to Wells Fargo Bank Minnesota, National Association.

\* \* \* It is my wish and desire that the Trustees in making any and all investments and reinvestments hereunder be conservative and cautious and regard more the character, value, safety and security of the investments than the rate of interest and the amount of income and profits to be derived therefrom.

The Williams trust owned and operated Creamette from the death of James T. Williams in 1951 until 1979, when Creamette was acquired by Borden, Inc. At the time of the trust's inception in 1951, its assets consisted almost exclusively of Creamette stock. As part of the acquisition by Borden, the trust's Creamette stock was exchanged for Borden common stock. As of January 1, 1980, nearly 100% of the total market value of the trust was in Borden stock.

In 1980, the trustees began selling shares of Borden stock because of a perceived need to diversify trust assets. As of December 31, 1989, the trust owned 600,000 shares of Borden common stock of a value of $36.375 per share; that stock accounted for 39.3% of the total market value of the trust. At trustees' meetings throughout the early 1990s, Robert H. Williams moved to sell large amounts of Borden stock. Norwest and Linstroth opposed these proposed sales. At several trustees' meetings in 1990, Norwest recommended reducing the concentration of Borden stock to 25% by the end of 1992, but also recommended deferring sale of the stock until its price rose in value.[2] In 1991, Norwest made no motions to sell Borden shares or to approve a diversification plan. In May 1992, Norwest presented a new plan to sell 10,000 Borden shares per quarter but did not move for approval of this plan until December 1992, by which time the value of Borden stock had fallen to $28.125 per share. Williams voted in favor of this proposal, and the trust began making sales of Borden stock. Borden stock continued to lose value in 1993 and 1994; Norwest continued to discommend any sales in excess of the agreed-on 10,000 per quarter, arguing that the stock's value might rise. In June 1994, Norwest recommended additional sales of Borden stock, and between July and September of that year, 225,000 shares were sold at prices ranging from $12.00 to $13.875 per share. Borden was acquired by Kohlberg, Kravis, Roberts in March 1995, and the trustees disposed of the trust's remaining Borden stock by exchanging it for RJR Nabisco stock. For purposes of this stock exchange, Borden common stock was valued at $14.25 per share.

In June 1996, Linstroth and Norwest petitioned the court for approval of the trustees' annual accounts for 1990 to 1995.[3] Williams objected to the petition, claiming that Norwest, as the professional trustee, was responsible for a significant loss in the value of the trust from the beginning of 1990 to the end of 1994 and should be surcharged for that loss. Norwest asserted that article VIII, section 12, of the trust instrument protected it from liability. That clause states:

**2.** Norwest presented similar diversification plans to the board in September 1987 and December 1989. Norwest never moved for approval of its 1987 plan. Although it moved for approval of its 1989 plan, it then tabled its motion, recommending that the plan's implementation be delayed "until we see some light at the end of the tunnel here in terms of the economy's performance."

**3.** In accordance with Minn.Stat. § 501B.23 (2000), the Williams trust is subject to the continuing supervision of the district court. Trusteeship accounts from the trust's inception through December 31, 1989, were filed with the district court and were duly settled and allowed by orders of the court. The 1985–89 accounts were settled by an order dated September 27, 1990.

No Trustee shall be liable for the default or doing of any other Trustee, whether the act be one of misfeasance or nonfeasance, nor shall he be held liable for any loss by reason of any mistake or errors of judgment made by him in good faith in the execution of his trust.

The district court dismissed the action against Norwest on the basis of this clause, finding that Norwest did not act with "malfeasance" and therefore was not liable. On appeal by Williams, this court reversed the dismissal, holding that the clause did not protect a professional trustee from liability for negligent acts and that a fact issue remained as to whether Norwest had failed to meet the standard of care for a professional trustee. *In re Trusteeship of Williams*, 591 N.W.2d 743, 747–48 (Minn.App.1999).

On remand, the district court considered Williams's surcharge claim. In an April 2000 order, the court concluded that the trustees had a duty to diversify the trust. The court also concluded that Norwest, as the professional trustee, had a duty to "educate or convince" the other trustees of the need to diversify the trust and that if Norwest was unable to do so, it had a duty "to seek instructions from the court concerning how to proceed. Failing that, it [had] an obligation to petition to withdraw." The court concluded that by deferring and delaying sales of Borden stock, apparently in an effort to "time" the market, Norwest breached its duty to diversify the trust. Based on expert testimony and the diversification plan that Norwest tabled in December 1989, the court determined that, from the beginning of 1990, Norwest should have supported reducing the Borden concentration to 25% by the end of 1992. The court calculated damages to be the difference between the trust's value at the end of 1994 and its estimated value at that time if it had been diversified consistent with this schedule.

The court imposed a surcharge on Norwest of more than $4 million, with interest, to compensate the trust and its beneficiaries for their losses through the end of 1994. In addition, the court held that, "because it breached its duty as trustee," Norwest must refund to the trust all trustee fees that it received for the 1990–94 accounting period.[4]

Norwest moved for amended findings and conclusions of law, or in the alternative, for a new trial. Williams moved for an award to the trust of his attorney fees, costs, and disbursements, and for pre-verdict interest on the refund of Norwest's trustee fees. By amended findings of fact, conclusions of law, and order for judgment filed on October 2, 2000, the district court denied Norwest's motion and granted Williams's motion. Judgment entered pursuant to that order was subsequently vacated because of an error in the calculation of interest, and on October 30, 2000, an amended judgment was entered. Norwest appeals.

## ISSUES

1. Did the district court err in determining that Minn.Stat. § 501B.10 (1994) imposed a duty, apart from the duty of prudent management, to diversify trust assets?

---

4. The district court and the parties refer to the period in question as both 1990–94 and 1990–95, and describe it both as a five-year and six-year period. Although Norwest and Linstroth petitioned the court for approval of the trustees' accounts for 1990–95, the court considered whether Norwest breached a duty to diversify and calculated damages only for 1990–94. We, therefore, refer to the period in question as the "1990–94 accounting period."

2. When it had approved the trustees' investment strategy in a trust-accounting proceeding, did the district court abuse its discretion by calculating a surcharge against the professional trustee from the first day of the subsequent accounting period?

3. Did the district court abuse its discretion in requiring appellant to forfeit all of its trustee fees for the 1990–94 accounting period?

4. Did the district court err in determining that, under an exception to the rule that parties bear their own attorney fees, it had the discretion to grant an attorney-fee award against a trustee that it found had breached a duty to diversify?

## ANALYSIS

### I.

■ Norwest argues that the district court erred as a matter of law in determining that, during the 1990–94 accounting period, it had a legal duty to diversify the trust assets. The existence of a legal duty is a question of law, which appellate courts review de novo. *Larson v. Larson,* 373 N.W.2d 287, 289 (Minn.1985).

■ Williams argues that the question of whether, during the relevant period, Minnesota law imposed a duty to diversify was settled by this court when it considered the first appeal of this case and is, therefore, the "law of the case." The doctrine of law of the case applies when an appellate court has ruled on a legal issue and remanded to the lower court for fur-

ther proceedings. *Mattson v. Underwriters at Lloyds of London,* 414 N.W.2d 717, 719–20 (Minn.1987). Issues determined in the first appeal "will not be relitigated in the trial court nor re-examined in a second appeal." *Id.* at 720. In the first appeal, this court was asked to determine whether an exculpatory clause in the trust instrument shielded Norwest from liability. *In re Trusteeship of Williams,* 591 N.W.2d 743, 746 (Minn.App.1999). The court determined that the clause did not protect Norwest from liability for negligence and remanded for a determination of whether Norwest had failed to meet the minimum standard of care for a professional trustee. *Id.* at 748. This court did not determine whether the trustees had a legal duty to diversify trust assets; Norwest is not, therefore, precluded from raising this issue on appeal.

■ Williams also argues that Norwest cannot, on appeal, assert that the trustees had no duty to diversify because it did not raise this argument in the district court on remand. This court will generally not consider matters not argued and considered in the court below. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988). Norwest argued before the district court that, while trustees had a duty of prudent management under Minn.Stat. § 501B.10 (1994),[5] any accompanying duty to diversify was not absolute. This argument is the basis of Norwest's appeal. Because the issue was argued below, it is properly before this court.

---

5. Although we cite to the 1994 version of Minn.Stat. § 501B.10 for convenience, that provision remained unchanged throughout the 1990–94 accounting period. It was later repealed, effective January 1, 1997, and replaced by the Minnesota Prudent Investor Act, currently codified as Minn.Stat. § 501B.151 (2000). *See* 1996 Minn. Laws ch. 314, §§ 4, 8. Under the Prudent Investor Act, trustees have a duty to "diversify the investments of the trust unless the trustee reasonably determines that, because of special circumstances, the purposes of the trust are better served without diversifying." Minn. Stat. § 501B.151, subd. 3.

The district court determined that Minn.Stat. § 501B.10 creates two distinct duties: "a duty to diversify which is part of the duty to invest prudently" and "an independent duty to diversify unless clearly exempted under Minn.Stat. § 501B.79," citing for this proposition *In re Trusts Created by Hormel,* 504 N.W.2d 505 (Minn.App.1993), *review denied* (Minn. Oct. 13, 1993).[6] Norwest argues that *Hormel* does not support this proposition. We agree.

In *Hormel,* a professional trustee rejected the income beneficiaries' requests to diversify the assets of several trusts, which the settlors funded primarily with Geo. A. Hormel & Co. (Hormel) stock. *Id.* at 507. Instead, the trust maintained a controlling interest in Hormel, as intended by the settlor. *Id.* The income beneficiaries requested the district court to surcharge the professional trustee for breaching its fiduciary duty by failing to diversify the trusts. *Id.* at 508. The beneficiaries argued that Minn.Stat. § 501B.10, subd. 1(a) and (b)(2), imposed a duty to diversify trust assets. *Id.* at 511. Those provisions required that, in considering an investment, a trustee "shall consider the role that the investment plays within the trust's overall portfolio of assets" and that one of the factors that a trustee should consider in determining the prudence of an investment was "the composition of the portfolio of the trust with regard to diversification." Minn.Stat. § 501B.10, subd. 1(a), (b)(2).

This court rejected the beneficiaries' argument that this language imposes a duty to diversify trust assets. Rather, the court concluded that the standard for evaluating a trustee's exercise of discretion was "whether the trustee prudently managed trust assets in light of the settlor's intent and the beneficiary's interests." *Hormel,* 504 N.W.2d at 512. The district court erred in determining that section 501B.10 created an independent duty to diversify a trust separate from the duty of prudent management.

The district court also stated that there was a "duty to diversify which is part of the duty of prudent management." Under Minn.Stat. § 501B.10, subd. 1(a), trustees had a duty of prudent management. And a trustee with "greater skills than a person of ordinary prudence," which Norwest concedes that it has in the area of trusts, had "a duty to use those skills." *See* Minn. Stat. § 501B.10, subd. 1(a). Section 501B.10 lists a number of factors to be considered by a trustee in considering the prudence of a particular investment, among which is diversification. *Id.,* subd. 1(b)(2). But while it is true that in some cases the duty of prudent management required diversification, this is not true in every case. The standard for evaluating a trustee's actions under section 501B.10 was "whether the trustee prudently managed trust assets in light of the settlor's intent and beneficiary's interests." *Hormel,* 504 N.W.2d at 512. As the *Hormel*

---

6. Minn.Stat. § 501B.79 (1994) merely defines the term "trustee." Because the district court attributes language from Minn.Stat. § 501B.80 (1994) to section 501B.79 elsewhere in its order, we assume that the court also intended to refer to section 501B.80 in this portion of its order. Section 501B.80 allowed the grantor to incorporate by reference in the trust instrument certain powers of a trustee that are enumerated in section 501B.81 (1994). These include the power to retain property "without regard to any effect retention may have on the diversification of the assets of the trust." Minn.Stat. § 501B.81, subd. 1. As the court noted in *Hormel,* while this provision indicates that Minnesota was not "hostile, as a matter of public policy, to the concept of undiversified trusts," it does not answer the question of "whether, in the absence of express language, there is a separate duty to diversify apart from the general duty of prudent management." 504 N.W.2d at 511–12 n. 1.

court noted, trust cases "present unique facts and circumstances that are difficult to analogize to other seemingly similar cases." *Id.* In fact, the court concluded in *Hormel* that the professional trustee did not breach its duty of prudent management by refusing to diversify the trusts' assets because one of the settlors' dominant purposes for creating the trusts was to place ownership and control of Hormel with the trusts. *Id.* at 509–10.

The district court further concluded that the trust instrument here created a duty to diversify. The court based this conclusion on provisions in the trust instrument (1) requiring that in making investments and reinvestments, the trustees "be conservative and cautious and regard more the character, value, safety and security of the investments than the rate of interest and the amount of income" to be derived from them; and (2) allowing the trustees to retain cash uninvested. We note that the settlor's intent, as expressed in the trust instrument, is relevant to the question of whether the trustees had a duty to diversify the trust assets. But it does not,

alone, answer the question of whether the duty of prudent management required Norwest, as the professional trustee, to support diversification or convince the other trustees to diversify the trust.[7]

■ We reverse and remand for the district court to apply the appropriate legal standard. On remand, the district court should address whether, in light of the settlor's intent and the beneficiaries' interests, Norwest's duty as a prudent manager required it to support diversification or convince the other trustees to diversify the trust and, if so, whether it breached that duty.[8]

## II.

Norwest also challenges the district court's (1) calculation of the surcharge against it, (2) denial of all its trustee fees for the 1990–94 accounting period, and (3) grant to Williams of an attorney-fee award against it. Although we remand on the issue of liability, we address these damages issues to aid the court and the parties in the event the issues recur on remand.

---

7. We note that the Restatement (Second) of Trusts, § 184(c), on which, together with expert testimony, the district court relied in concluding that Norwest had a duty to "educate or convince" its co-trustees of the need to diversify and, if it was unable to do so, "to seek instructions from the court," requires that when "the circumstances are such that it is the duty of the trustees to exercise a power conferred upon them," and a co-trustee refuses to exercise that power, "the other trustees are not justified in merely acquiescing in the non-exercise of the power" but rather "it is their duty to apply to the court for instructions."

8. Williams argues that expert testimony he presented regarding community standards also imposes a duty to diversify. In a professional-malpractice action, the plaintiff "must present evidence of the applicable standard of care, and that the standard of care was breached." *Wartnick v. Moss & Barnett,* 490

N.W.2d 108, 116 (Minn.1992). Generally, expert testimony is required to establish a standard of care and a departure from it. *Id.; see also In re Trust of Kemske,* 305 N.W.2d 755, 761 (Minn.1981) (noting that determination of negligent management of trust would have required "expert testimony·on the key issue, i.e., what a prudent trustee would have done at the time."). But a professional "will not be bound to conform its conduct to a standard of care unless a legally recognized duty exists." *ServiceMaster of St. Cloud v. GAB Business Services, Inc.,* 544 N.W.2d 302, 307 (Minn. 1996) (citation omitted). Expert testimony regarding industry custom, while "important in establishing a standard of care, does not by itself establish a legal duty to exercise that care * * *." *Id.* (citation omitted). While the expert testimony here is relevant as to the standard of care for a prudent professional trust manager, it does not, by itself, establish a legal duty.

■ Damage awards are reviewed under an abuse-of-discretion standard. *Holiday Recreational Indust., Inc. v. Manheim Servs. Corp.*, 599 N.W.2d 179, 183 (Minn.App.1999). Findings underlying those awards will not be set aside unless they are clearly erroneous. *Id.* Findings of fact should be upheld if they are reasonably supported by the evidence. Minn. R. Civ. P. 52.01; *Neilan v. Braun*, 354 N.W.2d 856, 859 (Minn.App.1984).

1. Surcharge

■ Norwest argues that the district court abused its discretion in calculating the surcharge from the first day of the accounting period, January 1, 1990, because the district court previously approved the trustee's accounts through December 31, 1989. According to Norwest, any plan to diversify the trust beginning on January 1, 1990, would have had to have been initiated during the 1985–89 accounting period, and the court's approval of the accounts for the 1985–89 period was, therefore, res judicata to denying it trustee fees from the beginning of 1990.

■ As the district court noted, the first time that Norwest asserted this argument was in its motion for a new trial. A party may not raise an issue for the first time in a motion for a new trial. *Larson v. Anderson, Taunton & Walsh, Inc.*, 379 N.W.2d 615, 622–23 (Minn.App.1985), *review denied* (Minn. Mar. 14, 1986). There is an exception to this rule, under which a party who first learns of the existence of an underlying fact during trial may preserve the issue for appeal by raising it in a posttrial motion. *Kitchar v. Kitchar*, 553 N.W.2d 97, 100 (Minn.App.1996), *review denied* (Minn. Oct. 29, 1996). But Norwest knew of the September 1990 order long before trial; Norwest was one of the petitioners who, in August 1990, sought that order.

■ Even if Norwest could properly raise this argument, we conclude that the district court's approval of the trust's accounts through the end of the 1985–89 accounting period is not res judicata to a calculation of damages from the beginning of the next accounting period. Norwest argues that because the court approved its conduct as a trustee through the end of 1989, and in particular approved of the trust continuing to hold 40% of its value in Borden stock, the court may not impose liability on Norwest for any action or inaction on its part up to that point. But while it is true "that the judgment in a trust accounting proceeding is a final judgment deserving of res judicata effect," it is incorrect to say that "an investment strategy once approved in an accounting proceeding is immune from challenge in subsequent accounting periods." *Hormel*, 504 N.W.2d at 511. And here, the district court did not fault Norwest's investment strategy during the 1985–89 accounting period; rather, it determined that from 1990 to 1994, Norwest's action, or inaction, regarding divestment was "significantly different" from its actions during the previous accounting period. Specifically, the court found that during the earlier accounting period, Norwest supported the sale of Borden stock and proposed investment plans both in 1987 and 1989 to reduce the concentration of Borden stock to 25% of the trust assets by 1992, but that

the minutes of the trustees' meetings and other evidence in the record establish that Norwest abandoned its own plan to reduce the Trust's Borden concentration, beginning with the tabling of its motion to adopt the 1989 plan at the December, 1989, Trustees' meeting, and never bringing that plan back for a vote. During the 1990–1994 accounting period, Norwest made continual recommendations to defer and delay sales of Borden

shares, failed to make motions to sell Borden shares, failed to support Robert Williams' motions to sell, and sought to time the market for diversification of the Borden investment.

Because a review of the record shows that these findings are reasonably supported by the evidence, we conclude that the court did not abuse its discretion by calculating damages from the beginning of 1990.

### 2. Trustee Fees

Norwest argues that the district court erred in ordering it to reimburse to the trust all of its trustee fees for the 1990–94 accounting period. The district court concluded that Minnesota courts have the discretion to allow or deny compensation to the trustee but that "in the event of fraud, bad faith, or inexcusable negligence, the court *must* deny an award of trustee fees," citing *In re Trust of Comstock*, 219 Minn. 325, 17 N.W.2d 656 (1945) and its progeny. Based on its finding of inexcusable negligence, the court denied all trustee fees for the 1990–94 accounting period. Norwest argues that (1) courts have the discretion to reduce a trust's compensation to a trustee without a finding of fraud, bad faith, or inexcusable neglect but can deny all compensation only upon making such a finding; and (2) even upon a finding of fraud, bad faith, or inexcusable neglect, courts are not required to deny all compensation; rather they have the discretion to do so.

In *Comstock*, the supreme court determined that the trustee's decision to retain certain common stock was not negligence but rather a "mere error of judgment" and that the district court did not abuse its discretion in approving trustee fees because

> [t]he facts of this case do not bring it within the rule that a trustee *should* be denied compensation where he is guilty

of fraud, bad faith, or inexcusable negligence resulting in loss to the trust estate.

*Id.* at 339, 17 N.W.2d at 664 (emphasis added). The conduct at issue in *Comstock* was an error in judgment; the issue of fraud, bad faith, or inexcusable neglect was not before the court. We determine that, insofar as it could be interpreted to require the denial of trustee fees on a finding of fraud, bad faith, or inexcusable neglect, the "rule" described in the above-cited passage is dictum. In fact, this court has affirmed the reduction, rather than denial, of trustee fees where there was an affirmative finding of fraud. *See In re Trust Created by Boss*, 487 N.W.2d 256, 262 (Minn.App.1992), *review denied* (Minn. Aug. 11, 1992). We conclude that when the district court makes a finding of fraud, bad faith, or inexcusable neglect, it has the discretion to deny all fees, to allow reduced compensation, or to allow full compensation.

This conclusion is supported by the Restatement (Second) of Trusts § 243, to which this court has turned in the past in addressing trustee-fee issues. *See id.* at 261–62. The commentary to Section 243 explains that when a trustee's compensation is reduced or denied, the reduction or denial is not an additional penalty for the breach of duty but "is based upon the fact that the trustee has not rendered or has not properly rendered the services for which compensation is given." Restatement (Second) of Trusts, § 243, cmt. a. Further, it is "within the discretion of the court" to determine whether a trustee that has breached its duty "shall receive full compensation or whether [its] compensation shall be reduced or denied." *Id.*, cmt. c. Thus, even absent a finding of fraud, bad faith, or inexcusable neglect, the district court has the discretion to reduce or deny trustee's fees so long as it finds that

the trustee's failure to render or render properly its services results in a breach of duty.[9] *Id.*

 This court has reversed a district court's allowance of all trustee fees and remanded for findings to determine whether "all of the claimed fees" were reasonably related to "activities that furthered the trust's interests." *In re Trusteeship Created by City of Sheridan,* 593 N.W.2d 702, 709 (Minn.App.1999). Because the reduction or denial of fees is based on the trustee's failure to render or to render properly the services for which compensation is given, we hold the corollary to be true: Before reducing or denying trustee fees, a district court must find that the fees to be reduced or denied relate to the trustee's failure to render services or to render services properly. *See* Restatement (Second) of Trusts § 243, cmt. c (requiring court, in exercising its discretion to allow, reduce, or deny fees, to consider several factors, including whether trustee's breach of duty "was related to the management of the whole trust or related only to a part of the trust property"); *Id.*, cmt. d (stating that where trustee "intentionally or negligently mismanages the *whole* trust, he will *ordinarily* be allowed no compensation") (emphasis added). If, on remand, the district court reduces or denies Norwest's trustee fees, it must do so based on a finding that the fees to be reduced or denied relate to a failure by Norwest to render services or to render services properly.

3. Attorney Fees

 Norwest argues that the district court abused its discretion in ordering it to pay Williams's attorney fees. A reviewing court will not reverse a district court's award or denial of attorney fees absent an abuse of discretion. *Becker v. Alloy Hardfacing & Eng'g Co.,* 401 N.W.2d 655, 661 (Minn.1987). Minnesota follows the "American rule" concerning the award of attorney fees; as the Minnesota Supreme Court recently noted, it is a

> fundamental principle of law deeply ingrained in our common law jurisprudence that each party bears his own attorney fees in the absence of a statutory or contractual exception.

*Ly v. Nystrom,* 615 N.W.2d 302, 314 (Minn.2000). Here, the district court did not identify a statutory or contractual provision on which its award of attorney fees was based. Instead it cited a handful of cases from foreign jurisdictions for the proposition that, in trust cases, courts have the discretion to grant an award of attorney fees against a "breaching fiduciary."

 Minnesota cases provide that a trustee may be entitled to reasonable attorney fees paid out of the trust. *See, e.g., In re Atwood's Trust,* 227 Minn. 495, 502, 35 N.W.2d 736, 740 (1949) (allowing reasonable attorney fees, paid out of trust corpus, to parties for proceeding brought to construct ambiguous trust provisions); *Williams,* 591 N.W.2d at 748 (noting that trustee entitled to reasonable attorney fees, chargeable to trust, for defending its administration of trust, defending proceeding for benefit of trust, and defending beneficiary's challenge to trust's administration). But there is no Minnesota case

---

9. The restatement provides that in the exercise of this discretion, the court should consider the following factors: (1) whether or not the trustee acted in good faith; (2) whether the breach of trust was intentional, negligent, or without fault; (3) whether the breach related to the management of the whole trust or related only to a part of the trust assets; (4) whether or not the breach occasioned any loss and whether, if there was a loss, it has been made good by the trustee; and (5) whether the trustee's services were of value to the trust. *Id.*

requiring a trustee whose management of a trust has been challenged to pay attorney fees incurred by the successful challenger.

The cases relied on by the district court discuss an exception to the American rule under which attorney fees may be awarded against a trustee, but only where a trustee is found to have engaged in "gross or inexcusable" misconduct. *See Wilmington Trust Co. v. Coulter*, 208 A.2d 677, 682 (Del.Ch.1965) (noting attorney-fee award would be appropriate only "in the very unusual situation," for example where trustee's behavior has been "of a gross or inexcusable nature"); *Parker v. Rogerson*, 49 A.D.2d 689, 690, 370 N.Y.S.2d 753, 755 (N.Y.App.Div.1975) (allowing attorney-fee award in proceeding to establish self-dealing); *Allard v. Pacific Nat'l Bank*, 99 Wash.2d 394, 663 P.2d 104, 110, 112 (1983) (requiring trustee to pay attorney fees for "inexcusable conduct" in "egregious breach" of its fiduciary duty; namely, failure to obtain independent appraisal of property or inform beneficiaries of its sale where property was trust's only asset); *Wolff v. Calla*, 288 F.Supp. 891, 894 (E.D.Pa.1968) (quoting *Wilmington* for "gross or inexcusable" standard).[10] In the only Minnesota case arguably on point, the supreme court noted that an attorney-fee award against a trustee was not proper when the trustee acted in good faith and was not prompted by an improper motive. *In re Drake's Will*, 195 Minn. 464, 469, 263 N.W. 439, 442 (1935). But the court did not address whether a finding of bad faith or improper motive would justify such an award. This court

is an intermediate appellate court. It is primarily decisional and error correcting

rather than a legislative or doctrinal court. Its primary function is the correction of error by application of legal principles. Its task is to find the law, to state it and to apply it to the facts. Only when there are no statutory or judicial precedents to follow will the Court of Appeals make new law.

*St. Aubin v. Burke*, 434 N.W.2d 282, 284 (Minn.App.1989) (quotation omitted), *review denied* (Minn. Mar. 29, 1989). If an exception to the American rule is to be adopted in Minnesota for trust cases, a clear expression of that change should be made by the supreme court or the legislature; it is not our role to do so. Further, even if we had the authority to adopt such an exception, we note that this case does not appear to present the type of "gross or inexcusable misconduct" or one of the other "unusual situations" that other jurisdictions have found to justify such an exception.

### DECISION

The district court did not abuse its discretion by deciding to calculate the surcharge from the beginning of the trust accounting period, and we affirm that decision. But the district court erred in (1) determining that Minn.Stat. § 501B.10 (1994) created a separate duty to diversify a trust's assets apart from the general duty of prudent management; (2) ordering Norwest to reimburse the trust for all of its trustee fees without finding that all of those fees related to any improper actions; and (3) concluding that it had the discretion to grant attorney fees against Norwest under an exception to the American rule. We reverse and remand for the district court to address whether, in light of the settlor's intent and the beneficiaries'

---

**10.** The other case cited by the district court, *Estate of Bonin*, is inapposite because the attorney-fee award in that case was not granted against the trustee for mismanagement of a trust but rather for pursuing an appeal that was without merit, frivolous, and intended for delay. *Estate of Bonin*, 457 A.2d 1123, 1125 (Me.1983).

interests, Norwest breached its duty of prudent management by failing to support diversification or convince the other trustees to diversify the trust assets. We see no need to reopen the record on remand, but we leave that decision to the discretion of the district court.

**Affirmed in part, reversed in part, and remanded.**