**In re The Naomi MARGOLIS REVOCABLE TRUST.**

**Barry Lorberbaum, petitioner, Appellant,**

**v.**

**Sherry Huff, as Special Administrator of the Estate of Jack Margolis, Respondent.**

**No. A08-1407.**

Court of Appeals of Minnesota.

June 2, 2009.

Bruce C. Recher, Henson & Efron, P.A., Minneapolis, MN, for appellant.

Grant R.J. Lindquist, David M. Jacobs, P.A., Minneapolis, MN, for respondent.

Considered and decided by SHUMAKER, Presiding Judge; BJORKMAN, Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge.*

On appeal after remand, appellant-trustee challenges the district court's determination that no damages were warranted for respondent-former-trustee's exercise of discretionary powers prohibited by Minn. Stat. § 501B.14 (2008). Appellant also argues that the district court erred by (1) declining to take additional testimony on respondent's failure to inform appellant of his duties as successor trustee, (2) not awarding him attorney fees levied against respondent personally, and (3) awarding trustee attorney fees to respondent. We affirm.

## FACTS

Respondent Jack Margolis (husband)[1] and Naomi Margolis (wife) were married in 1979. Each of them had children from a previous marriage. In 1994, wife created the Naomi Margolis Revocable Trust (the trust) to replace an antenuptial agreement, naming herself and husband as co-trustees. In the event that wife became unwilling or unable to serve as a trustee, she could designate a successor trustee. If she did not do so, the trust designated her son, appellant Barry Lorberbaum (son), as the default successor.

During wife's lifetime, the trust required the trustees to distribute trust assets at her request. Upon her death, trust assets would be used to satisfy wife's debts and taxes and to pay for expenses associated with her last illness, funeral, burial, and the administration of her estate. The balance of the trust estate would go to wife's children and grandchildren.

Section 2.2 of the trust governed distributions if wife became incapacitated:

> At any time while [wife] ... is incapacitated through illness or any other cause, the Trustees shall pay to or expend for the benefit of [wife], and [wife]'s issue such sum or sums from either the net income from or the principal of the Trust Estate as the Trustees, in the Trustee's discretion, may deem necessary or advisable to provide for the proper support, maintenance, and health of [wife], and [wife]'s issue.[ [2]]

In 2001, wife's health deteriorated, and she became incapacitated. Husband did not notify son of his role as successor trustee. Husband admitted wife to a nursing home; the admission agreement, which was signed only by husband, stated that hus-

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. Husband died after the initial district court proceedings. Although the special administrator of his estate is now the named respondent on appeal, we will treat him as the individual respondent for simplicity.

2. Section 2.2 called for the question of wife's incapacitation to be determined by "the Trustees and a competent medical advisor." Although husband did not obtain a medical opinion, we previously held that husband's unilateral determination was inconsequential because wife's incapacitation was not disputed. *In re Revocable Trust of Margolis,* 731 N.W.2d 539, 546–47 (Minn.App.2007).

band was jointly and severally responsible for all charges. Between 2001 and wife's death in early 2004, husband liquidated $206,384 in trust assets, deposited the proceeds into his and wife's joint checking account, and used the proceeds to fund wife's nursing-home and other medical expenses. Shortly before wife's death, husband also transferred additional trust assets into his own trust, but later reversed the transfer.

In August 2004, son petitioned the district court to remove husband as trustee, to appoint himself as trustee, and for a full accounting. Son also sought restitution for the $206,384 husband used to fund wife's nursing-home and other medical expenses, alleging that it amounted to a breach of his fiduciary duties to the trust. The district court removed husband as trustee and appointed son but, following trial on the accounting, concluded that husband's expenditures as trustee were proper.

On appeal, we reversed the district court's approval of husband's payments, holding that Minn.Stat. § 501B.14, subd. 1(2), prohibited husband, who was legally obligated to pay for his wife's health-care and nursing-home expenses, from exercising his discretionary powers as trustee to use trust assets for this purpose. *In re Revocable Trust of Margolis,* 731 N.W.2d 539, 544–45 (Minn.App.2007). Consequently, we remanded the matter for determination of a proper remedy, noting that section 501B.14 does not provide one. *Id.* at 545. We also directed the district court to make further findings on the applicability of the trust's exculpatory clause, son's breach-of-fiduciary-duty claims, and the effect of husband's failure to notify son of his role as successor trustee. *Id.* at 545–47.

On remand, son sought to supplement the record with additional testimony regarding what he would have done upon assuming the mantle of successor trustee. The district court declined to reopen the record on the issue, reasoning that it "easily could have been addressed at the time of the original hearing," but permitted son to make an offer of proof as to his intended testimony. According to this offer of proof, son would have attempted to convince husband to minimize the use of trust assets for wife's nursing-home and other medical expenses.

Ultimately, the district court determined that no damages were warranted for husband's improper exercise of discretionary powers because (1) the underlying transaction was expressly authorized by the trust and the trust's terms demonstrated that wife, as settlor, intended trust funds to be used to pay for her nursing-home and medical expenses; and (2) husband's improper payments were not the result of "actual fraud or willful misconduct" and therefore fell within the trust's exculpatory clause. The district court also found that no damages were warranted for husband's failure to inform son of his position as successor trustee because wife intended the trustees, whoever they were, to pay for her nursing-home and medical expenses. The district court further speculated that, as both husband and son had a "conflict of interest" with respect to the payments at issue—husband benefited from using trust funds rather than his own assets to pay, and son benefited as a remainder beneficiary from husband using his own assets to pay-the district court would have ordered payment from the trust to effectuate wife's unambiguous intent. The district court also denied son's request for attorney fees against husband personally as not authorized by Minnesota law, and awarded attorney fees from the trust to both husband and son in their capacities as trustees. This appeal followed.

## ISSUES

I. Did the district court err by determining that husband's improper discretionary payment of wife's nursing-home and medical expenses did not result in damages?

II. Did the district court err by not reopening the record for further testimony on the successor-trustee issue?

III. Does Minnesota law authorize attorney fees against a trustee in his individual capacity?

IV. Did the district court abuse its discretion by awarding trustee attorney fees to husband?

## ANALYSIS

### I.

Son challenges the district court's finding, relying on the trust's exculpatory clause, that no damages are warranted for husband's use of trust assets to pay wife's nursing-home and medical expenses, in violation of Minn.Stat. § 501B.14. We will not disturb a damage award on appeal "unless [our] failure to do so would be shocking or would result in plain injustice." *Hughes v. Sinclair Mktg., Inc.,* 389 N.W.2d 194, 199 (Minn. 1986).

Previously on appeal, we held that husband violated Minn.Stat. § 501B.14, subd. 1(2), by exercising his discretionary power under the trust to pay wife's nursing-home and medical expenses from the trust. *Margolis,* 731 N.W.2d at 544–45. But we noted that the statute does not provide a remedy for its violation. *Id.* at 545. And although we agreed that the per se liability sought by son would be an appropriate remedy for a statutory violation when the trustee engaged in actual fraud or willful misconduct, we also observed that the trust agreement appears to provide its own standard for liability. *Id.* Specifically, we looked to section 8.8 of the trust agreement, which provides:

> [No trustee] shall at any time be held liable for a mistake of law and/or fact, for an error of judgment, nor for any loss or injury coming to any trust estate or to any beneficiary thereof ... except as a result of actual fraud or willful misconduct....

*Id.* (brackets in original). Consequently, we remanded for the district court "to make factual findings pursuant to section 8.8 of the [trust agreement] and to determine the appropriate remedy and damages for [husband]'s failure to comply with the statute." *Id.*

Son now challenges the district court's determination that section 8.8 of the trust excuses husband from liability. After comprehensive findings and a thorough analysis, the district court found that the payments were not made as the result of actual fraud or willful misconduct. In doing so, the district court reasoned that: (1) the unambiguous terms of the trust expressly authorized those payments to be made, even if section 501B.14 prohibited husband from being the one who made them; and (2) husband, as a lay trustee, was likely unaware of the statutory prohibition, which had gone largely unnoticed by the estate-planning and estate-administration community. As a result, the district court found that husband did not violate any common-law duties of loyalty by making the payments and enforced the trust's exculpatory clause to relieve him of liability for any losses to the trust.

In the previous appeal, husband argued that Minn.Stat. § 501B.14, subd. 1(2), did not apply to his discretionary payments to the nursing home because it was enacted solely for federal estate-tax purposes. *Margolis,* 731 N.W.2d at 543. We rejected this argument because the statute's plain

language unambiguously prohibited a trustee from exercising a discretionary power to pay his own support obligations. *Id.* at 543–44. Consequently, we had no reason to ponder why the prohibition was enacted because it clearly applied to husband's payments. *Id.* Husband now argues, however, that the estate-tax purposes behind section 501B.14 are relevant to the current appeal, because they go to the appropriate remedy for an established violation. Husband is correct.

Apart from the brief discussion in our previous decision, the appropriate remedy for a violation of section 501B.14 is a question of first impression. In construing a statute, our primary objective is to ascertain and effectuate the legislature's intent. Minn.Stat. § 645.16 (2008). When, as here, the statutory language is not explicit, we may consider the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief it attempts to remedy and the object it seeks to attain, and other laws on the same or similar subjects. *Id.*

As son acknowledged at oral argument, all of his arguments on appeal are premised on a single proposition: that the prohibition found in Minn.Stat. § 501B.14, subd. 1(2), is a prohibition on trustee self-dealing. Son argues that (1) the trust's exculpatory clause is unenforceable because relieving a trustee of liability for a violation of the statute's prohibition on trustee self-dealing is contrary to public policy; (2) the exculpatory clause is ambiguous in scope because it does not specifically relieve a trustee from liability for self-dealing, and a violation of the statute amounts to trustee self-dealing; and (3) the district court clearly erred by finding that husband's actions were not willful misconduct or actual fraud because a violation of the statute—as a prohibition on trustee self-dealing—is inherently willful fraud or actual misconduct. The problem with all of these arguments, however, is that their underlying premise is fundamentally flawed.

Section 501B.14 is not a prohibition on self-dealing. It is unmistakably adapted from section 814 of the Uniform Trust Code, which is designed to "rewrite the terms of a trust that might otherwise result in adverse estate and gift tax consequences." *See* Unif. Trust Code § 814, cmt. (2000) (explaining purpose of prohibitions). Both place nearly identical restrictions on trustee discretion. Minnesota's version provides that, unless the terms of the trust refer specifically to section 501B.14 and provide that it does not apply:

> No trustee may exercise or participate in the exercise of any of the following powers:
>
> (1) any power of the trustee to make discretionary distributions of either principal or income to or for the benefit of the trustee as beneficiary, unless by the terms of the will or other written instrument those discretionary distributions are limited by an ascertainable standard relating to that trustee's health, education, maintenance, or support as described in sections 2041 and 2514 of the Internal Revenue Code of 1986, as amended through December 31, 1992; or
>
> (2) any power to make discretionary distributions of either principal or income to discharge any legal support or other obligations of the trustee to any person.

Minn.Stat. § 501B.14, subds. 1, 3. Likewise, the Uniform Trust Code provides:

> Subject to [the applicability provisions of] subsection (d), and unless the terms of the trust expressly indicate that a rule in this subsection does not apply:
>
> (1) a person other than a settlor who is a beneficiary and trustee of a trust

that confers on the trustee a power to make discretionary distributions to or for the trustee's personal benefit may exercise the power only in accordance with an ascertainable standard; and

(2) a trustee may not exercise a power to make discretionary distributions to satisfy a legal obligation of support that the trustee personally owes another person.

Unif. Trust Code § 814(b). Both provide nearly identical mechanisms for such a discretionary power to be exercised when a trustee is prohibited from doing so. Minnesota's version provides:

> Any power described in subdivision 1 that is conferred upon two or more trustees may be exercised by the trustee or trustees who are not disqualified under subdivision 1. If there is no trustee qualified to exercise the power, any trustee or other person interested in the trust may petition the district court pursuant to section 501B.16 to appoint an additional trustee. The district court may limit the powers of an additional trustee appointed under this subdivision to exercise the power to make discretionary distributions when no other trustee may exercise that power.

Minn.Stat. § 501B.14, subd. 2. Similarly, the Uniform Trust Code provides:

> A power whose exercise is limited or prohibited by subsection (b) may be exercised by a majority of the remaining trustees whose exercise of the power is not so limited or prohibited. If the power of all trustees is so limited or prohibited, the court may appoint a special fiduciary with authority to exercise the power.

Unif. Trust Code § 814(c). Finally, both contain applicability provisions focused on the tax consequences of a trustee exercising an otherwise-prohibited discretionary power. Minnesota's version does not apply to a trustee

> (1) who retains or is granted an unlimited lifetime or testamentary power, exercisable in a capacity other than as trustee, to revoke the trust, or to withdraw all of the income and principal of the trust, or to appoint all of the income and principal of the trust to the trustee individually or the trustee's estate;
>
> (2) of a trust created on or before May 14, 1993, if the entire principal of the trust would be included in the gross estate of the trustee for federal estate tax purposes if the trustee had died on May 14, 1993, without regard to any power described in subdivision 1;
>
> (3) of a trust created on or before May 14, 1993, if no part of the principal of the trust would be included in the gross estate of the trustee for federal estate tax purposes if the trustee had died on May 14, 1993, without exercising the power; or
>
> (4) of a trust created on or before May 14, 1993, if (i) the trust is not exempt from generation-skipping transfer tax under chapter 13 of the Internal Revenue Code of 1986, as amended through December 31, 1992, because of [I.R.C. § 2601], (ii) there would be a taxable termination with respect to the assets held in the trust if the trustee and all beneficiaries of the trust who are assigned to the trustee's generation or a higher generation had died on May 14, 1993; and (iii) the trust would have an inclusion ratio, as defined in section 2642(c) of the Internal Revenue Code of 1986, as amended through December 31, 1992, of one with respect to the taxable termination.

Minn.Stat. § 501B.14, subd. 3(b). Analogously, the Uniform Trust Code provides that its prohibitions do not apply to

(1) a power held by the settlor's spouse who is the trustee of a trust for which a marital deduction, as defined in Section 2056(b)(5) or 2523(e) of the Internal Revenue Code of 1986, as in effect on [the effective date of this [Code]] [, or as later amended], was previously allowed;

(2) any trust during any period that the trust may be revoked or amended by its settlor; or

(3) a trust if contributions to the trust qualify for the annual exclusion under Section 2503(c) of the Internal Revenue Code of 1986, as in effect on [the effective date of this [Code]] [, or as later amended].

Unif. Trust Code § 814(c) (brackets in original). While there are some differences between the two, when their language, structure, and operation are compared side by side, it is clear that the legislature intended Minn.Stat. § 501B.14 to be a tax-curative statute patterned after U.T.C. § 814.

Although there is no Minnesota legislative history or caselaw explaining the basis for prohibiting certain exercises of trustee discretion, the commentary to the Uniform Trust Code explains the rationale for rewriting the terms of a trust:

> Subsection (b)(1) states the main rule. Unless the terms of the trust expressly indicate that the rule in this subsection is not to apply, the power to make discretionary distributions to a beneficiary-trustee is automatically limited by the requisite ascertainable standard necessary to avoid inclusion of the trust in the trustee's gross estate or result in a taxable gift upon the trustee's release or exercise of the power. Trusts of which the trustee-beneficiary is also a settlor are not subject to this subsection. In such a case, limiting the discretion of a settlor-trustee to an ascertainable standard would not be sufficient to avoid inclusion of the trust in the settlor's gross estate. Furthermore, the inadvertent inclusion of a trust in a settlor-trustee's gross estate is a far less frequent and better understood occurrence than is the inadvertent inclusion of the trust in the estate of a nonsettlor trustee-beneficiary.
>
> Subsection (b)(2) addresses a common trap, the trustee who is not a beneficiary but who has power to make discretionary distributions to those to whom the trustee owes a legal obligation of support. *Discretion to make distributions to those to whom the trustee owes a legal obligation of support, such as to the trustee's minor children, results in inclusion of the trust in the trustee's gross estate even if the power is limited by an ascertainable standard.* The applicable regulation provides that the ascertainable standard exception applies only to distributions for the benefit of the decedent, not to distributions to those to whom the decedent owes a legal obligation of support.

Unif. Trust Code § 814 cmt. (emphasis added) (citations omitted).

Thus, it is not trustee self-dealing but rather the inadvertent inclusion of the trust in the trustee's gross estate that is the gravamen of a violation of Minn.Stat. § 501B.14, subd. 1(2). And because the statutory prohibition is designed to avoid unintended adverse tax consequences, all of son's fraud/willful-misconduct arguments based on its violation necessarily fail.[3] Likewise, there is no public-policy

3. Indeed, given the robust common-law protections against trustee self-dealing, it would be exceptionally strange for the legislature to condition a prohibition against such misconduct on tax consequences. *See generally*

reason against enforcing an exculpatory clause that excuses husband from liability for "any loss or injury" caused by using trust assets to pay for expenses expressly authorized by the trust's unambiguous terms. While the unambiguous language of Minn.Stat. § 501B.14, subd. 1(2), prohibited husband from exercising his discretion as trustee to pay for wife's nursing-home and medical expenses, *Margolis,* 731 N.W.2d at 544–45, husband did not automatically engage in prohibited self-dealing by doing so. Consequently, the district court did not err by enforcing the trust's exculpatory clause to relieve husband of liability for these payments.

## II.

Son argues that the district court erred by failing to take additional testimony on what he would have done as successor trustee. When we do not give specific directions as to how a district court should proceed on remand, the district court has the discretion to proceed in any manner consistent with our decision. *Duffey v. Duffey,* 432 N.W.2d 473, 476 (Minn.App. 1988). This discretion includes the ability to take additional evidence. *See Smith v. Minneapolis St. Ry. Co.,* 134 Minn. 292, 293–94, 157 N.W. 499, 499 (1916) (authorizing district court to entertain motion for new trial after remand).

In remanding, we directed the district court only to "reconsider the adverse effect, if any, of [husband]'s failure to obtain a successor trustee." *Margolis,* 731 N.W.2d at 547. Although taking addition testimony on the effect of husband's failure to notify son that he was named as a successor trustee would be consistent with this directive, so is reconsidering the issue based solely on the existing record. According to his proffer, son would have attempted to convince husband of the "wisdom of minimizing the use of Trust assets for [wife's] health and nursing-home expenses." The district court denied son's request for this additional testimony because he had the opportunity to present it at the original trial.[4] And while son asserts that any doubts about whether he would have been able to convince husband should be resolved in his favor, son could have testified about this during the original trial—when husband was still alive to rebut the doubts that son sought to raise on remand.

Further, it is not clear what son could have accomplished by testifying. Son focuses on the "doubts" that would have been raised if he had testified that he might have been able to convince husband to minimize the use of trust assets. But such doubts are metaphysical at best. As the district court noted, both husband and son had a "conflict of interest" with respect to the payments at issue. Both were opposing players in a zero-sum game: every trust dollar used to pay wife's expenses benefited husband to the extent that he did not have to pay it out of pocket; conversely, every dollar not used to pay wife's expenses benefited son as a remainder beneficiary upon wife's death. In light of the acrimonious litigation on the issue, son's proffered assertion seems inherently implausible. Thus, even if son had testified on remand, the district court would have been justified in rejecting his testimony and reaching the same result.

Finally, if son had become a successor trustee and refused to use trust assets to pay for wife's nursing-home expenses, hus-

Minn.Stat. § 501B.14, subd. 3 (application to trusts created before May 1993).

4. In fact, the transcript of the original trial shows that son did testify about the successor-trustee issue, although only briefly and not as to what he would have done differently.

band—who, despite being statutorily prohibited from exercising discretion to direct payment, would still be a cotrustee—would have been able to petition the district court to direct son to make the payments or to appoint a new trustee to do so. *See* Minn. Stat. § 501B.16(23) (2008) (authorizing district court to "instruct the trustee ... in any matter relating to the administration of the trust and the discharge of the trustee's duties"). And the district court found that a court would have ordered payments from trust assets because wife intended the trust's provisions for her lifetime support to trump the distribution-at-death provisions. In light of husband's and son's opposing interests, the district court's assumption that husband would likely have petitioned for directions is reasonable.

### III.

Son argues that the district court erred by rejecting his claim for attorney fees against husband individually as not authorized by Minnesota law. We will not reverse a district court's denial of attorney fees absent an abuse of discretion. *In re Trusteeship of Trust of Williams,* 631 N.W.2d 398, 409 (Minn.App.2001), *review denied* (Minn. Sept. 25, 2001) (*Williams II*). Moreover, it is well-settled that attorney fees are not recoverable in Minnesota unless there is a statutory authorization or a contractual agreement allowing them to be recovered. *E.g., In re Rollins,* 738 N.W.2d 798, 804 (Minn.App.2007).

The terms of the trust do not authorize attorney fees against a trustee in his individual capacity. And no statute explicitly authorizes them. Rather, son relies on the equitable powers granted to a district court by Minn.Stat. § 501B.16(19) (2008) to "redress a breach of trust." But while we have held that these powers may be used to deny a trustee's claim for statutory attorney fees paid from the trust when the trustee has acted in bad faith or has been guilty of fraud, *In re Boss,* 487 N.W.2d 256, 262 (Minn.App.1992), *review denied* (Minn. Aug. 11, 1992), we have also noted that "there is no Minnesota case requiring a trustee whose management of a trust has been challenged to pay attorney fees incurred by the successful challenger," *Williams II,* 631 N.W.2d at 409–10. And we refused to create such a rule in *Williams II* in light of the "fundamental principle of law deeply ingrained in our common law jurisprudence that each party bears his own attorney fees in the absence of a statutory or contractual exception." 631 N.W.2d at 409. Rather, this task would fall to the supreme court, even for claims based on the "gross or inexcusable misconduct" by a trustee. *Id.* at 410. Notwithstanding the plethora of cases from other jurisdictions cited by son, it is beyond the scope of our role as an error-correcting court to create such a rule now. *Id.*

### IV.

Son argues that the district court abused its discretion by awarding husband trustee attorney fees paid out of the trust. A trustee defending in good faith a challenge to his administration of the trust is entitled to reasonable attorney fees paid out of the trust. *In re Trust Created by Hill,* 499 N.W.2d 475, 494 (Minn.App. 1993), *review denied* (Minn. July 15, 1993); *see also* Minn.Stat. § 501B.71 (2008). A district court may deny a trustee's claim for attorney fees paid out of the trust when the trustee has acted in bad faith or has been guilty of fraud. *Boss,* 487 N.W.2d at 262. But we will not reverse a district court's award of attorney fees absent an abuse of discretion. *Williams II,* 631 N.W.2d at 409.

Son first argues that husband's request for trustee attorney fees was raised for the first time on remand. This argument is contradicted by the record. As husband correctly points out, he sought these fees in his initial responsive pleading.

Son next argues that the district court abused its discretion by awarding trustee attorney fees in light of husband's breaches of duty as trustee. But the district court found that husband did not act in bad faith or commit fraud by using trust funds to pay for wife's nursing-home and medical expenses because the trust itself directs the trustees, whoever they are, to pay those expenses. And with respect to husband's improper mingling of other trust assets with his own, the district court found that while these actions as trustee were "questionable," it concluded that they did not cause a loss justifying the denial of attorney fees because husband transferred those other assets back to the trust. The award of trustee attorney fees to husband, based on detailed and comprehensive findings, is not an abuse of discretion.

## DECISION

Because Minn.Stat. § 501B.14 is merely a tax-curative statute, respondent's violation of this section does not constitute prohibited trustee self-dealing. Consequently, the district court correctly enforced the trust's exculpatory clause after finding that respondent's violation did not amount to either fraud or willful misconduct. The district court did not abuse its discretion by not allowing appellant to present additional testimony as to what he would have done differently as successor trustee. The district court did not abuse its discretion by declining to award appellant attorney fees levied against respondent personally, and it did not abuse its discretion by awarding trustee attorney fees to respondent.

**Affirmed.**