*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0576**

In RE: The Matter of the Irrevocable Trust of Myron E. Childs, dated November 2, 2000.

**Filed January 26, 2026
Affirmed
Harris, Judge**

Faribault County District Court
File No. 22-CV-21-642

Kenneth R. White, Law office of Kenneth R. White, P.C., Mankato, Minnesota; and

Paul E. Grabitske, Grabitske Law Firm, PLC, Mankato, Minnesota (for appellant Denise Childs)

Jeremy M. Berg, Blethen Berens, Mankato, Minnesota (for respondent Bernard Brennen)

Dustan J. Cross, Adam N. Froehlich, Gislason & Hunter, LLP, New Ulm, Minnesota (for respondent Marcia Swanson)

Considered and decided by Slieter, Presiding Judge; Smith, Tracy M., Judge; and Harris, Judge.

**NONPRECEDENTIAL OPINION**

**HARRIS**, Judge

Appellant and respondent are co-beneficiaries of an irrevocable trust created by their father. On appeal in this trust dispute, appellant challenges the district court's orders interpreting the trust, arguing that (1) the district court erred in finding that appellant violated her fiduciary duties as trustee under Minnesota Statutes section 501C.0802 (2024) when she conveyed trust property to herself, (2) the district court erred by ordering

appellant to pay rent on a home that was a distributed asset, and (3) respondent lacks standing to challenge the approved accountings to their father during his lifetime. On cross-appeal, respondent argues that the district court erred in finding that appellant adequately accounted for the majority of the trust transactions from 2017 to 2020. Both parties argue that the district court erred in awarding the other party their respective attorney fees. We affirm.

## FACTS

In November 2000, Myron Childs[1] created the Myron E. Childs Irrevocable Trust (the trust). Appellant-cross respondent Denise Childs and her sister, respondent-cross appellant Marcia Swanson, are co-beneficiaries of the trust. Childs served as the trustee. The following summarizes the relevant record and procedural history.

### Myron E. Childs Irrevocable Trust Terms

Under the terms of the trust, Myron would receive annual distributions of net income from the trust during his lifetime. After Myron's death, Childs and Swanson would receive one-half of the total value of the trust, including all principal and undistributed income. The trust permitted Childs to distribute her share of the trust value to herself outright, while Swanson would receive her portion of the trust value in annual distributions. The trust was silent on who would receive two properties located in Minnesota and relevant

---

[1] Myron Childs is the deceased grantor of the Myron E. Childs Irrevocable Trust. Denise Childs, formerly known as "Denise Wolf," is the daughter of Myron Childs and trustee of the irrevocable trust. For purposes of this opinion, and to avoid confusion, Myron Childs will be referred to as "Myron" or "father" and Denise Childs will be referred to as "Childs."

2

to this appeal: a house located in Elmore (Elmore House) and farmland located in Faribault (Faribault Farm). Both properties are owned and managed by the trust.

## 2021 Petition for Trust Accounting

Following Myron's death in 2020, Childs began residing at the Elmore House. As trustee, Childs was responsible for collecting rent from the trust-owned real estate properties, including the Elmore House. While Childs resided at the Elmore House, Childs did not pay rent to the trust.

In 2021, Swanson petitioned the district court for (1) a full trust accounting from 2017 to 2020, (2) court supervision of the trust, (3) the removal of Childs as trustee, and (4) the appointment of a successor trustee. Swanson amended her petition to clarify the date she last received a distribution from the trust. In August 2022, the district court ordered Childs to determine a fair market value for the home and to pay the trust for her use of the Elmore House. One week later, Childs conveyed the Elmore House deed to herself while acting as trustee.

## 2023 Petition for Trust Accounting

In August 2023, Swanson filed another petition for trust accounting. In addition to her prior requests for relief, Swanson requested to void the Elmore House deed, arguing that Childs violated her duty of loyalty and impartiality as a trustee. Swanson also requested to terminate the trust. In November 2023, the district court ordered Childs to resign upon the completion of her duties and appointed a successor trustee. The district court dismissed Swanson's other requests for relief without prejudice to renew at a later

3

time. Four days later, while acting as trustee, Childs conveyed the Faribault Farm deed to herself.

*2024 Order Following Evidentiary Hearing*

In 2024, Childs petitioned the district court to approve the trust's final accounting. Swanson objected to Childs's proposed findings. The district court conducted a two-day evidentiary hearing on the matter. Following the evidentiary hearing, the district court (1) ruled that the Elmore House and Faribault Farm deeds were voidable, placing the properties back into the trust, (2) ordered Childs to reimburse the trust for rent and expenses she accrued while living at the Elmore House, (3) ordered Childs to distribute Swanson's annual 2021 trust income, (4) ordered Childs to reimburse the trust for unauthorized ATM withdrawals, and (5) authorized the successor trustee to pay reasonable attorney fees for Swanson and Childs related to the trust action.

*2025 Order on Motions for Amended Findings and Amended Order*

Childs moved the district court for amended findings. Childs asked the district court, in relevant part, to find that (1) the Elmore House and Faribault Farm deeds were not voidable under Minnesota Statutes section 501C.0802(b) because the transfer of properties was authorized by the trust as a "distribution," (2) a beneficiary may not void a distribution made by a trustee under section 501C.0802(b), and (3) Childs is entitled to the net income generated from the Elmore House because the income interest in the trust terminated upon her father's death.

The district court declined to adopt Childs's proposal for amended findings, concluding that (1) Childs did not have legal or equitable title to the Elmore House or

4

Faribault Farm because the trust did not expressly convey the properties to her, (2) the Elmore House and Faribault Farm were properties owned by the trust, and (3) the deeds were voidable under section 501C.0802(b) because Childs breached her fiduciary duties of loyalty and impartiality by removing the properties from the trust as trustee for her own benefit. The district court issued an amended order consistent with these findings.

Both Childs and Swanson appeal, raising numerous issues.

## DECISION

**I.** **The district court did not err in finding that Childs violated her fiduciary duties as trustee under Minnesota Statutes sections 501C.0802 and 501C.0803 (2024) when she conveyed trust property to herself.**

We "review de novo a district court's interpretation of a written document, which in this case is the Trust Agreement." *In re Stisser Grantor Tr.*, 818 N.W.2d 495, 502 (Minn. 2012). "We review the district court's findings of fact for clear error." *In re Lawrence B. Schwagerl Tr.*, 965 N.W.2d 772, 781 (Minn. 2021). When applying the clear-error standard of review, we view the evidence in the light most favorable to the district court's findings, and we do not reweigh the evidence or reconcile conflicting evidence. *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221-22 (Minn. 2021); *see also In re Otto Bremer Tr.*, 984 N.W.2d 888, 896 (Minn. App. 2023) (applying *Kenney* in a trust context). "We will not conclude that a factfinder clearly erred unless, on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed." *Kenney*, 963 N.W.2d at 221 (quotation omitted). "[F]indings are clearly erroneous when they are manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Id.* (quotation omitted).

"[O]ur purpose in construing a trust agreement is to ascertain and give effect to the grantor's intent . . . which we must gather from the instrument as a whole, not isolated words." *In re Stisser*, 818 N.W.2d at 502. (quotation omitted). "When the trust agreement is unambiguous, we will ascertain the grantor's intent from the language of the agreement, without resort to extrinsic evidence." *Id.* "[W]ritings are considered ambiguous only if their language is reasonably susceptible of more than one interpretation." *In re Tr. of Schwagerl*, 965 N.W.2d 772, 779 (Minn. 2021). Here, both parties agree that the language of the trust agreement is unambiguous. Therefore, we turn our analysis to whether the district court erred in finding that Childs violated her fiduciary duties as trustee under section 501C.0802.

Childs first argues that legal and equitable title of the trust property immediately transferred to her upon her father's death. Childs claims that when her father died, the real estate was no longer trust property and Childs was "required" to distribute the real estate to herself as a beneficiary of the trust.

The district court found that the trust did not expressly convey the properties to Childs. The trust provided, in relevant part, that:

> The total value of the trust shall be added to the gross appraised value of 80 acres of farmland previously deeded to my daughter, Denise L. [Childs], in a land trade for some land I previously owned in Lake Mills, Iowa. One half of this combined total, including all principal and undistributed income from the trust, shall be distributed outright to my daughter, Denise L. [Childs]; from her share shall be subtracted the 80 acres she already received from the land trade. The other half shall remain in trust for the benefit of my daughter, Marcia E. Swanson.

6

The district court found that the trust language did not grant Childs legal or equitable title to the properties that she ultimately conveyed to herself. Rather, the trust instrument only established a framework by which trust assets would be divided. Therefore, the district court concluded that the trust did not create a real property interest in any parcel of real estate that is definite enough to be recognized and enforced in either equity or law.

Childs claims that the conveyance of the deeds was authorized by the trust. Her argument relies on the improper assumption that the trust automatically granted her legal and equitable title to the trust properties, which it did not. The district court's ruling that Childs did not hold legal or equitable title of the Elmore House or Faribault Farm that she conveyed to herself is supported by the record. Childs's argument is unavailing in light of the applicable clear-error standard of review.

Childs next argues that the district court erred by failing to properly apply Minnesota Statutes section 501C.0802(b) when it determined that Childs violated her fiduciary duties. Childs argues that the district court misapplied the statute because section 501C.0802(b) only applies to the sale, encumbrance, or other transaction involving the management of trust-owned property. Again, relying on the improper assumption that she held legal and equitable title in the trust-owned properties, and that conveying these properties to herself was merely a "distribution of trust assets," Childs asserts that "trust distributions" are not among the types of voidable transactions provided under section 501C.0802(b). She argues that the statute's plain language demonstrates that a trust distribution is not the type of transaction that allows a beneficiary to void it under the statute because a distribution neither divests property through a sale nor diminishes property value through an

7

encumbrance. Childs argues that a distribution merely transfers legal and equitable title to the beneficiary and, unlike a sale or encumbrance, removes the asset from the trust altogether. She further asserts that the district court failed to address this argument. We disagree that the district court failed to address the argument or that it erred in doing so.

Statutory interpretation presents a question of law that we review de novo, without deference to the district court. *In re Civ. Commitment of Benson*, 12 N.W.3d 711, 715 (Minn. 2024). "The goal of statutory interpretation is to ascertain and effectuate the intent of the Legislature." *Id.* (quotation and citation omitted); *see also* Minn. Stat. § 645.16 (2024). When a statute is clear and unambiguous, we apply its plain meaning. *Benson*, 12 N.W.3d at 715.

Minnesota Statutes section 501C.0802(b)(1) (2024) provides:

> A sale, encumbrance, or other transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or which is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction unless . . . the transaction was authorized by the terms of the trust.

Although neither party asserts that the statute is ambiguous, they dispute the plain meaning of the term "transaction" as used in the text. We conclude that the statute is unambiguous and therefore apply its plain meaning. *State v. Defatte*, 928 N.W.2d 338, 340 (Minn. 2019). "When a statute does not define terms, we may look to the dictionary definition of those words to determine if a statute has a plain, unambiguous meaning." *State v. Abdus-Salam*, 1 N.W.3d 871, 877 (Minn. 2024); *see also Laymon v. Minn. Premier Props., LLC*, 913 N.W.2d 449, 453 (Minn. 2018). Black's Law Dictionary defines "transaction" broadly,

8

including "an act or an instance of conducting business or other dealings." *Black's Law Dictionary* 1808 (12th ed. 2024). By its plain terms, the ordinary usage of the term "transaction" encompasses distributions.

Contrary to Childs's assertion, the district court expressly addressed her argument. In its order on amended findings, the district court determined that although "Childs's action in deeding the property to herself was neither a sale nor an encumbrance," it was "a transaction involving the management of real estate owned by the trust." Thus, the district court correctly recognized that the statute encompasses not only sales and encumbrances but also "other transaction[s]" involving the investment or management of trust property when affected by a trustee's conflict of interest.

Childs's argument would effectively read the phrase "other transaction[s]" out of the statute, contrary to the principle that courts must give effect to every word and phrase. *See Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000) ("A statute should be interpreted, whenever possible, to give effect to all of its provisions; no word, phrase, or sentence should be deemed superfluous, void, or insignificant." (quotation omitted)).

For these reasons, we conclude that Minnesota Statutes section 501C.0802(b) unambiguously applies to any "transaction," involving a trustee's violation of the duties of loyalty and impartiality set forth in Minnesota Statutes sections 501C.0802(a) and 501C.0803. Here, the district court properly applied the statutory text, and we discern no error in its analysis.

Childs next argues that the district court's findings did not have substantial support in the record. We disagree.

9

A beneficiary is "a person that has a present or future beneficial interest in a trust, vested or contingent." Minn. Stat. § 501C.0103(c)(1) (2024). "Trustee includes an original, additional, and successor trustee, and a co-trustee, whether or not appointed or confirmed by a court." Minn. Stat. § 501C.0103(t) (2024). Trustees are responsible for "prudently manag[ing] trust assets in light of the settlor's intent and the beneficiary's interests." *In re Trs. Created by Hormel*, 504 N.W.2d 505, 512 (Minn. 1993), *rev. denied* (Minn. Oct. 19, 1993). "A trustee owes a duty of loyalty to the beneficiaries. A trustee shall not place the trustee's own interests above those of the beneficiaries." Minn. Stat. § 501C.0802(a) (2024). "If a trust has two or more beneficiaries, the trustee shall administer the trust impartially, giving due regard to the beneficiaries' respective interests." Minn. Stat. § 501C.0803 (2024). "A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." Minn. Stat. § 501C.1001(a) (2024).

The district court found that because Childs did not hold legal or equitable title to the Elmore House or Faribault Farm, by conveying the properties to herself, Childs entered into a transaction involving the management of real estate owned by the trust. The district court also found that Childs breached her duty of loyalty and impartiality under sections 501C.0802(a) and 501C.0803 based, in part, on the timing of the deed transfers. The district court noted that the trust was responsible for all costs associated with the properties, but when the trust began incurring significant litigation costs, Childs removed the properties from the trust. This resulted in the costs of this litigation being paid solely from the trust income in which Swanson had an interest. The district court concluded that the

timing of the deed transfers called into question whether Childs acted in bad faith, making the deeds voidable.

Here, Childs is not just a trustee—she is also a named beneficiary of the trust. As the administrator of the trust, and as someone with a present interest in the trust, Childs wore both hats. As trustee, Childs was prohibited from placing her own interests above those of the other trust beneficiaries. Notably, Childs acted as trustee during the times that were most convenient to her. For example, Childs used her role as trustee to convey the Elmore House deed to herself shortly after the district court ordered her to make reasonable rent payments to the trust. Similarly, Childs used her role as trustee to convey the Faribault Farm to herself just four days after the court ordered Childs to resign as trustee. Both deeds provide that, "Denise L. Childs, as Trustee of Myron E. Childs Irrevocable Trust ("Grantor"), hereby conveys and quitclaims to Denise L. Childs ("Grantee"), real property in Faribault County, Minnesota, legally described as follows." Childs now attempts to leverage her role as beneficiary of the trust to justify these transfers before this court.

Here, the district court's findings have substantial support in the record. After carefully reviewing the evidence, we conclude that the record does not leave us with a firm conviction that the district court made a mistake. Accordingly, we conclude the district court did not clearly err in finding that Childs violated her fiduciary duties as trustee under Minnesota Statutes sections 501C.0802 and 501C.0803 by conveying trust property to herself for her personal benefit.

11

**II.** **The district court did not err by ordering Childs to reimburse the trust for rent and expenses that she incurred while living at the Elmore House because the house is trust-owned property.**

"A trustee shall administer the trust as a prudent person would, by considering the purposes, terms, and distribution requirements of the trust and all relevant circumstances. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." Minn. Stat. § 501C.0804 (2024); *see In re Trs. of Hormel*, 504 N.W.2d at 511 (stating that a trustee has a duty to manage the trust prudently). "A trustee shall take reasonable steps to take control of and protect the trust property." Minn. Stat. § 501C.0809(b) (2024).

Childs argues that the district court erred by ordering Childs to pay rent for property that was "distributed" to her as a trust beneficiary. Childs also asserts that any income generated from the Elmore House belongs to her, not the trust. This argument is unavailing.

The district court found that Childs had not been paying rent to the trust while she lived at the Elmore House. Furthermore, Childs had the trust pay all of the expenses associated with the upkeep and maintenance of the Elmore House. The district court ordered Childs to determine a fair market rate for the home and to make rent payments to the trust. Following this order, Childs determined that $550 per month was an appropriate amount of rent but offered little support for the rental value she proposed. Additionally, Childs discontinued her rent payments to the trust once she transferred the Elmore House deed to herself. The district court determined that until the Elmore House was properly transferred out of the trust, it belonged to the trust as an asset. The district court also determined that as a fiduciary, Childs had an obligation to prudently manage the Elmore House by collecting reasonable rent for the trust. The district court found that Childs did

12

not act appropriately as a fiduciary with respect to the Elmore House and ordered Childs to reimburse the trust for rent and expenses she incurred while living at the Elmore House from 2020 through 2023.

We have already determined that the record supports the district court's rulings that Childs did not hold legal or equitable title to the Elmore House, and that the transfer of the Elmore house to Childs was not a "distribution." Accordingly, the record supports the district court's determination that Childs had a fiduciary duty to prudently manage the Elmore House—a trust-owned property—by collecting reasonable rent for the trust. Therefore, the district court did not err in ordering Childs to reimburse the trust for rent and expenses that she incurred while living at the Elmore House.

### III. Swanson has standing to challenge the approved accounting to their father during his lifetime as an "interested person" under Minnesota Statutes section 501C.0201(a) (2024).

Childs argues that Swanson lacks standing to challenge the approved accounting to Myron during his lifetime because she was not entitled to the trust income while he was alive. Swanson argues that she has the right to challenge the final accounting as an "interested person" because she is a beneficiary of the trust. We agree with Swanson.

"Minnesota case law . . . requires that a party have standing before a court can exercise jurisdiction." *Richards v. Reiter*, 796 N.W.2d 509, 512 (Minn. 2011). "Standing focuses on whether the plaintiff is the proper party to bring a particular lawsuit." *Citizens for Rule of Law v. Senate Comm. on Rules & Admin.*, 770 N.W.2d 169, 174 (Minn. App. 2009) (quotation omitted). "A party has standing when (1) the party has suffered an injury-in-fact, or (2) the party is the beneficiary of a legislative enactment granting standing."

13

*Stone v. Invitation Homes, Inc.*, 986 N.W.2d 237, 245 (Minn. App. 2023) (quotation omitted). The existence of standing is reviewed de novo. *Richards*, 796 N.W.2d at 512.

As relevant here, "[a]n interested person may petition the district court and invoke its jurisdiction . . . for those matters specified in section 501C.0202." Minn. Stat. § 501C.0201(a). An "interested person" "includes an acting trustee . . . a beneficiary . . . and any other person having a property or other right in or claim against the assets of the trust." Minn. Stat. § 501C.0201(b) (2024).

Here, Swanson is a beneficiary of a legislative enactment granting standing, namely Minnesota Statutes section 501C.0202, as an "interested person." Minn. Stat. § 501C.0201(a). Swanson is an "interested person" because she is a beneficiary of the trust with a property right in the trust assets. Accordingly, we conclude that Swanson has standing to challenge the approved accounts to Myron during his lifetime as an "interested person" under section 501C.0201(a) (2024).

**IV.    The district court did not err in finding that Childs adequately accounted for the majority of the trust transactions from 2017 to 2020.**

Swanson argues that the district court erred in finding that Childs adequately accounted for the majority of the trust transactions from 2017 to 2020 because Childs did not provide Swanson or the district court with formal accountings for that time period. Swanson believes that the absence of any formal accounting is evidence that Childs failed to keep adequate records of the trust and failed to keep Swanson informed as a trust beneficiary. We are not persuaded.

"A trustee shall keep adequate records of the administration of the trust." Minn. Stat. § 501C.0810(a) (2024). "Trustees owe their beneficiaries certain fiduciary duties, such as . . . the duty of information." *In re Otto Bremer Tr.*, 2 N.W.3d 308, 319 (Minn. 2024). "A trustee shall keep the qualified beneficiaries of an irrevocable trust reasonably informed about the administration of the trust and of the material facts necessary to protect their interests." Minn. Stat. § 501C.0813(a) (2024). "Unless unreasonable under the circumstances, a trustee shall promptly respond to a beneficiary's request for information related to the administration of an irrevocable trust." *Id.*

The district court found that while Childs did not provide formal accountings between 2017 and 2020, Childs submitted bank statements and check registers that were sufficient to demonstrate that she maintained adequate records of the trust. The district court found that the bank statements and check registers satisfied Childs's obligation as a fiduciary aside from three exceptions: (1) an excess of ATM withdrawals, (2) unauthorized credit card bills, and (3) Childs's use of the Elmore House. First, the district court found that Childs paid herself a $300 fee each month for bookkeeping services by withdrawing funds from the trust savings account. The district court found that on several occasions, Childs withdrew more than her established fee, resulting in Childs withdrawing an excess of $5,100 from the trust without adequate explanation. Next, the district court found two unexplained credit card bills that were paid by the trust. Lastly, Childs's use of the Elmore House conflicted with her obligations as a fiduciary. Aside from these exceptions, the district court concluded that the financial records satisfied Childs's obligation as a fiduciary of the trust.

15

Here, the bank statements and check registers provide sufficient evidence of the trust transactions from 2017 to 2020. While they are not formal accountings, they demonstrate that Childs maintained adequate records of the trust. Moreover, the financial records demonstrate that Childs kept Swanson reasonably informed about the administration of the trust under section 501C.0813(a). During the evidentiary hearings, Swanson testified that she received the bank statements and check registers from Childs. Swanson claims that the financial records are insufficient because they were not substantiated with corresponding invoices, cancelled checks, receipts, or other verification of the trust payments. Again, we are not persuaded. Nowhere in section 501C.0810(a) or 501C.0813(a) does it require a trustee to provide specific types of documentation to prove that they kept adequate records of the trust's administration or to demonstrate that they kept a beneficiary reasonably informed. Swanson appears to be dissatisfied with the type of records Childs provided to her.

In sum, the district court did not err in finding that Childs adequately accounted for the majority of trust transactions from 2017 to 2020.

**V.**     **The district court did not err as a matter of law in awarding attorney fees to Swanson or abuse its discretion in awarding attorney fees to Childs.**

"In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party from the trust that is the subject of the judicial proceeding." Minn. Stat. § 501C.1004 (2024); *see also In re Jorgenson Family Tr.*, 10 N.W.3d 502, 507 (Minn. App. 2024) (holding that section 501C.1004 governs attorney-fee awards to third parties).

We review a district court's award of attorney fees for an abuse of discretion. *Jorgenson*, 10 N.W.3d at 506; *see also In re Tr. Created by Hill*, 499 N.W.2d 475, 493 (Minn. App. 1993) ("Determination of whether attorney fees will be chargeable to a trust is within the sound discretion of the district court and will not be reversed absent an abuse of discretion."), *rev. denied* (Minn. July 15, 1993). A district court abuses its discretion when it makes findings unsupported by the record, misapplies the law, or reaches a decision that is contrary to logic or the facts. *Jorgenson*, 10 N.W.3d at 506 (citing *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022)).

### A.    The district court did not abuse its discretion by awarding attorney fees to Swanson.

Childs first argues that the district court abused its discretion by awarding Swanson her attorney fees because Swanson failed to comply with Minnesota General Rule of Practice 119 by failing to file an affidavit describing the legal work that her attorney performed in relation to the trust action.

Rule 119 states that "[i]n any action or proceeding in which an attorney seeks the award, or approval, of attorney[] fees in the amount of $1,000 for the action, or more, application for award or approval of fees shall be made by motion." Minn. Gen. R. Prac. 119.01. Rule 119.02 provides that "the motion [for attorney fees] shall be accompanied by an affidavit of any attorney of record," detailing certain information, such as the work performed, the date upon which the work was performed, the amount of time spent on each item of work, the normal hourly rate for each person for whom compensation is sought,

and a detailed itemization of all amounts sought for disbursement. Minn. Gen. R. Prac. 119.02.

This court has previously held that a district court has discretion to strictly enforce or to waive the requirements of rule 119 when considering a motion for attorney fees. *See Rooney v. Rooney*, 782 N.W.2d 572, 577 (Minn. App. 2010). Here, there is no evidence in the record that Swanson filed a rule 119 motion for attorney fees. But the district court did not appear to strictly enforce rule 119 when it awarded Swanson attorney fees, which it has discretion to do. Accordingly, the district court did not abuse its discretion by not strictly complying with the requirements of rule 119.

Childs next contends that the district court abused its discretion by directing the successor trustee to determine the amount each party would receive. Childs argues that the district court abused its discretion by delegating this responsibility to the successor trustee. Childs misreads the district court's order.

"In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party from the trust that is the subject of the judicial proceeding." Minn. Stat. § 501C.1004. "An award of . . . attorney fees rests largely within the district court's discretion. The reasonable value of compensation or reimbursement is a question of fact. We review a district court's findings of fact under the clearly erroneous standard." *In re Stisser Grantor Tr.*, 818 N.W.2d at 507 (citations omitted).

In its order, the district court noted that "the successor [t]rustee is authorized to *pay* reasonable attorney fees for Swanson and Childs related to this [t]rust action." The district

court did not give the successor trustee authority to determine the award of attorney fees. The district court allowed the successor trustee to pay Childs and Swanson their respective attorney fees from the trust.

Accordingly, we conclude that the district court did not abuse its discretion in awarding Swanson her respective attorney fees.

**B.       The district court did not abuse its discretion by awarding attorney fees to Childs.**

Swanson argues that the district court abused its discretion by awarding attorney fees to Childs because Childs acted in bad faith. More specifically, Swanson claims that Childs accumulated unnecessary litigation costs that the trust would ultimately have to pay. Swanson also points to the contentious legal battle between her and Childs as evidence that Childs engaged in bad faith "stalling" tactics and therefore is not entitled to attorney fees. Her arguments are not supported by the record.

"Minnesota cases provide that a trustee may be entitled to reasonable attorney fees paid out of the trust." *In re Tr. of Williams*, 631 N.W.2d 398, 409 (Minn. App. 2001). "A trustee is entitled to reasonable attorney fees incurred in good faith in defending its administration of the trust instructions, defending a proceeding for the benefit of the trust, and defending a beneficiary's challenge to the trust's administration." *In re Tr. of Hill*, 499 N.W.2d at 494.

The district court declined to find that, overall, Childs acted in bad faith to justify the denial of her respective attorney fees. Moreover, evidence in the record does not support the conclusion that Childs intentionally "stalled" the proceedings or accumulated

19

unnecessary litigation costs. To the contrary, it appears that Childs incurred reasonable litigation costs while defending Swanson's challenges to the trust's administration. The district court did not abuse its discretion in determining that justice and equity required an award of attorney fees.

Alternatively, Swanson argues that even if Childs was entitled to some attorney fees, the district court abused its discretion by failing to review the reasonableness of the attorney fees requested. Swanson contends that Childs was not entitled to reimbursement of purely clerical tasks, and that by drafting letters and filing pleadings, Childs's attorney engaged in tasks that were "clearly clerical in nature" and therefore should not be reimbursed.

We review the reasonableness of an award of attorney fees for an abuse of discretion. *In re Margolis Revocable Tr.*, 765 N.W.2d 919, 928 (Minn. App. 2009). "[A]ttorneys' fees and other expenses reasonably and necessarily incurred by all necessary parties to litigation may be allowed and properly charged to the trust estate . . . if an adjudication . . . is essential to a proper administration of the trust, and if . . . the litigation is conducted in good faith for the primary benefit of the trust as a whole." *In re Atwood's Tr.*, 35 N.W.2d 736, 740 (Minn. 1949).

We conclude that the district court properly exercised its discretion in awarding Childs's attorney fees. First, the district court expressly found that Childs did not act in bad faith. Additionally, the court made detailed findings supporting its fee award, and those findings are supported by the record. Finally, the district court declined to award fees for certain claims it deemed inappropriate, demonstrating that it applied its discretion

20

carefully and with discernment. Accordingly, the district court did not abuse its discretion in awarding attorney fees to Childs.

In sum, we discern no basis to disturb the district court's order concerning the administration of the trust or the related matters.

**Affirmed.**